Curtis COWAN, Plaintiff,

v.

The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Defendant.

Civ. No. B–81–511 (PCD).

United States District Court,
D. Connecticut.

Jan. 8, 1990.

Joseph D. Garrison, Garrison, Kahn, Silbert & Arterton, New Haven, Conn., for plaintiff.

Wayne A. Schrader, Gibson, Dunn & Crutcher, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION ON ATTORNEY'S FEES

WINTER, Circuit Judge: *

This action was brought by plaintiff Curtis Cowan ("Cowan") against defendant The Prudential Insurance Company of America ("Prudential"). Mr. Cowan, a black man, alleged that Prudential had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1982) ("Title VII") and 42 U.S.C. § 1981 (1982) by discriminating against him in a series of promotion decisions. Mr. Cowan, who had resigned from Prudential when he was not promoted, also alleged that Prudential had subjected him to conditions so intolerable that they amounted to a constructive discharge. For trial purposes, liability and damages were bifurcated. In my decision on liability, *Cowan v. Prudential Ins. Co.,* 703 F.Supp. 177 (D.Conn.1986), familiarity with which is assumed, I held that Prudential had violated Title VII and Section 1981 when Edward Amatrudo, Mr. Cowan's superior, failed even to consider Mr. Cowan for three promotions for which he was qualified. I also held, however, that Mr. Cowan had not been constructively dis-

---

* The Hon. Ralph K. Winter, United States Circuit Judge for the Court of Appeals for the Second Circuit, sitting by designation.

charged. In my decision on damages, *Cowan v. Prudential Ins. Co.*, 703 F.Supp. 196 (D.Conn.1987), familiarity with which is also assumed, I awarded Mr. Cowan $15,000 in damages for emotional distress under Section 1981, but nothing in backpay. On Mr. Cowan's appeal and Prudential's cross-appeal, the court of appeals affirmed on both liability and damages. *Cowan v. Prudential Ins. Co.*, 852 F.2d 688 (2d Cir. 1988). The present decision concerns Mr. Cowan's application for attorney's fees.

Title 42 U.S.C. § 2000e–5(k) (1982) provides that in Title VII cases the court may, in its discretion, award the prevailing party a reasonable attorney's fee. Title 42 U.S.C. § 1988 (1982) provides in similar language for an award of fees to a prevailing party in a Section 1981 action.

Because the law is unclear as to the effect of the size of the damage award on the size of the permissible fee award, I am rendering alternative decisions in the hope of avoiding the need for a remand should appellate review lead to a reversal of the judgment entered. I first calculate a "lodestar" award for all time spent by counsel on issues on which plaintiff prevailed. That amount is $52,905.76. I then calculate an alternative fee award by taking into account both the size of the damage award and the congressional purpose of encouraging the prosecution of meritorious civil rights cases. The amount I arrive at is $20,000.00, for which judgment will be entered. I next calculate an alternative fee taking into account only the size of the actual damage award. That amount is $6,000.

I turn first to the "lodestar" method under which compensation covers all time spent on issues on which plaintiff prevailed. A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912, and *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," 461 U.S. at 433, 103 S.Ct. at 1939, but "[t]he court necessarily has discretion in making this equitable judgment," *id.* at 437, 103 S.Ct. at 1941. The "most critical factor" in exercising that discretion is "the degree of success obtained." *Id.* at 436, 103 S.Ct. at 1941. A plaintiff thus "need not have won a judgment on all of his claims in the litigation in order to be a prevailing party within the meaning of Section 1988." *Gingras v. Lloyd*, 740 F.2d 210, 212 (2d Cir. 1984); *see also Hensley*, 461 U.S. at 434–37, 103 S.Ct. at 1939–41. Moreover, an award for the full number of hours may be appropriate when the plaintiff was unsuccessful on some claims but both the successful and the unsuccessful claims involved a "common core" of fact or law. *See* 461 U.S. at 435, 103 S.Ct. at 1940; *see also Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1259 (2d Cir.1987) (applying *Hensley* to Age Discrimination in Employment Act case).

Mr. Cowan requests fees totaling $84,970.75 and costs of $4,722.55. He claims that the $84,970.75 figure represents a reasonable "lodestar" award based on "prevailing market rates." *See Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). In calculating the $84,970.75 figure, his attorneys have excluded only those hours spent on an abortive class-action claim and on the unsuccessful appeal from my damages award. They have thus included hours spent on the wholly unsuccessful constructive discharge claim, the preparation and presentation of evidence that I deemed not to be probative on any material issue, and the largely unsuccessful damages claim. They argue that they are entitled to fees for that work because it involved a common core of facts or legal theories relating to the matters on which Mr. Cowan prevailed. I disagree.

It is quite clear that much of the work performed by plaintiff's counsel played no role in his prevailing and should not be

compensated. Although a scientifically verifiable method of separating issues on which Mr. Cowan prevailed from those on which he failed is not available, I can easily make rough but fair estimates. The bases for the finding of liability were Mr. Amatrudo's admission at trial that he did not even consider Mr. Cowan for promotion and evidence that Mr. Cowan was qualified by Prudential's own standards. *See* 703 F.Supp. at 187. I found that this failure even to consider him was, in light of Mr. Cowan's performance as demonstrated by Prudential's own methods of evaluation, more probably than not based on racial considerations. *Id.* at 188. The liability trial, however, entailed extensive testimony concerning meetings between Mr. Cowan and various officers of Prudential; accounts of unpleasant encounters between Mr. Cowan and his co-employees after he had filed charges of discrimination; and Mr. Cowan's emotional reactions to events. This evidence was unhelpful on his liability claim and did not substantiate the constructive discharge claim on which Mr. Cowan did not prevail. Similar considerations apply to the damages trial. Mr. Cowan totally failed to prevail on the backpay issue. Moreover, I rejected virtually all of the evidence at the damages trial concerning Mr. Cowan's purported reaction to events as not caused by Prudential.

■ Using these distinctions as a guideline, the proceedings can be separated into six stages. The first stage involves the preparation, filing and pretrial work done through Judge Dorsey's denial of Prudential's motion for summary judgment on September 5, 1984. Distinguishing between matters on which plaintiff prevailed from those on which he did not prevail is difficult for this period. However, much of the work done concerned defendant's motion for summary judgment, which was based on Mr. Amatrudo's affidavit setting out his purported reasons for not promoting Mr. Cowan. This motion related only to liability and had to be defeated to get to trial. I have previously found that this affidavit was substantially an after-the-fact rationalization that contained various untruths. *See* 703 F.Supp. at 185. Surely, however, some of counsels' efforts were spent on the constructive discharge issue. Plaintiff should be awarded attorney's fees for 90% of the hours expended during this period.

■ The second stage encompasses the period from the denial of the motion for summary judgment through the trial. Work during this period consisted of preparation for trial and the trial itself. Substantial portions of this work involved preparation and introduction of evidence regarding Mr. Cowan's meetings with Prudential officials, interaction with other employees and Mr. Amatrudo, and emotional reactions to events. As noted above, this evidence either did not contribute to Mr. Cowan's prevailing on the liability issue or was relevant to the unsuccessful constructive discharge claim. Some witnesses who testified to these matters might not have been called or have been allowed to testify because their testimony on liability was essentially cumulative. A substantial discount must therefore be applied. Plaintiff should be awarded fees for 70% of the time spent.

■ The third stage involves the briefing and oral argument regarding liability. A very substantial discount must be applied here because counsel did not argue Mr. Amatrudo's failure to consider Mr. Cowan for promotion as a basis for liability even though I questioned Mr. Amatrudo closely on this issue at trial. Had the case been decided on the basis of the arguments in the briefs alone, Mr. Cowan would have lost on all his claims.

The failure to make this argument is not necessarily due to a lack of skill on the part of plaintiff's attorneys. They are highly experienced in this area of the law and otherwise ably presented the case. The failure to brief this argument may well have been a tactical decision based on the belief that Mr. Amatrudo's failure even to consider Mr. Cowan became known only at trial and, if the sole basis of liability, would not support the constructive discharge claim. They might have feared—with ample reason—that the case on backpay was

non-existent unless the constructive discharge claim prevailed. Nevertheless, counsel fees should not be awarded for work that treated the only factual claim on which plaintiff prevailed as not worth winning. Moreover, the failure to make this argument provided the defendant an opportunity to take a cross-appeal, claiming that its due process rights had been violated by my holding it liable on an argument not made in plaintiff's post-trial brief. Still, plaintiff's brief was of some aid to me with regard to Prudential's evaluative methods, and I award fees for 20% of this time.

■ The fourth stage encompasses the period from my decision on liability until the decision on damages and includes testimony, briefing and argument. Although I awarded Mr. Cowan $15,000 for emotional distress, very little of this award was based on the work performed by counsel during this period. Plaintiff's evidence on back pay failed to support the claim. *See* 703 F.Supp. at 198–200. I further rejected his claim that his extreme reactions, evidence of which predominated in the evidence on damages for emotional injury, were caused by Mr. Amatrudo's discriminatory conduct. I thus found the great bulk of evidence and briefing to be unpersuasive. In effect, therefore, plaintiff prevailed only on a very small part of his claim for damages, as reflected in the fact that he took an appeal. Fees should be awarded for only 15% of the time expended.

■ The fifth stage consists of the appeal to the Second Circuit. Plaintiff prevailed only as to defendant's cross-appeal regarding liability, and his counsel indicate that they request fees only for work on the appellate reply brief. They further represent that the hours requested have been discounted to reflect the fact that a portion of the reply brief addresses the plaintiff's unsuccessful arguments on damages. However, the affidavits supporting the fee request do not reflect the pre-discount total hours spent on the reply brief and indeed itemize some hours for appeals work not related to the reply brief. In addition, the principal ground of the cross-appeal was occasioned by plaintiff's failure at the trial level to make the sole argument regarding liability that I found persuasive. Accordingly, I award only 20% of the hours requested for appellate work.

■ The final stage encompasses preparation of the fee application. Although the application has succeeded only in part, I award fees for 100% of time spent. The hours spent are modest (largely because no attempt was made to separate out work on matters on which plaintiff did not prevail) and the prevailing portion of work cannot be separated from the non-prevailing.

■ Mr. Cowan's counsel argues that the congressional policy encouraging the bringing of civil rights suits by "private attorneys general" justifies a very generous fee award in this case. Although counsel concedes that Mr. Cowan's class action became untenable after *General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), he maintains that the decision on liability "provides the functional equivalent of a class-based remedy." Accordingly, it is argued, plaintiff's counsel served the function of "private attorneys general." *See Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966; *see also McCann v. Coughlin*, 698 F.2d 112, 129 (2d Cir.1983). I disagree. The only public interest to benefit from my decision was in furthering the general public interest in law enforcement. Otherwise, the benefit was entirely in Mr. Cowan's private recovery of $15,000. I did not find widespread discrimination at Prudential. To the contrary, I expressly found that the discrimination in question was the act of one person who believed it necessary to conceal his discriminatory motive from his superiors. His superiors thus had no reason to suspect discrimination, but they nevertheless actively sought to help Mr. Cowan by offering him sales manager's positions elsewhere. Mr. Cowan's right to decline these offers and not to be discriminated against in the Stamford region is unquestioned, but he can hardly claim that this litigation did more than remedy the individual, concealed acts of a single employee who has since departed from Prudential. I thus am not persuaded by the argument that Mr. Cowan's counsel

served as a private attorney general in this matter.

■ Neither am I persuaded by Prudential's contention that Mr. Cowan's refusal of pretrial offers of settlement exceeding $15,000 should foreclose an award of attorney's fees for work done after that offer. Prudential argues that, because its settlement offers exceeded Mr. Cowan's ultimate recovery, Mr. Cowan in effect lost by going to trial. Prudential thus maintains that Mr. Cowan cannot properly be described as a "prevailing party."

It is true that *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) held that "[c]ivil rights plaintiffs ... who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected." *Id.* at 10, 105 S.Ct. at 3017. *Marek*, however, dealt only with offers of judgment made pursuant to Fed.R.Civ.P. 68.[1] No such offer was made here.

Absent a statutory or procedural rule mandating otherwise, I do not believe that a party's declining settlement offers should operate to reduce an otherwise appropriate fee award. The very existence of Rule 68, with its precise requirements, creates a negative implication as to offers of settlement that do not comply with its terms. Moreover, it is not clear that a rule barring all attorney's fee awards for post-offer work where the ultimate judgment is below the offer would be consistent with Congress's purpose of creating incentives to the bringing of meritorious civil rights claims. A rule giving trial judges discretion to deny such fees where the refusal of an offer is shown after the fact to have been unwise might well lead to very uneven results and even misuse in cases in which judges become involved in settlement negotiations. It may be that our legal system badly needs a mechanism to encourage early settlement, but that mechanism ought to emerge either from the rule-making process or directly from Congress.

I turn now to the precise calculation of the "lodestar" amount. In assigning a fee rate to the hours worked, it is the normal practice in this Circuit to apply the historic rate—that is, the amount that an attorney's time would have been billed at the time the work was done. *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1153 (2d Cir.1983). However, the Supreme Court has recently stated that application of a current rate rather than historic rates is an appropriate adjustment for delay in payment. *See Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Accordingly, Mr. Garrison's time will be compensated at his current claimed hourly rate of $175. Attorney Fey will receive her current rate of $85 per hour. As for Attorney Newman, a very recent law school graduate, her claimed rate is $95 per hour. She is considerably less experienced than Ms. Fey, and I reduce her rate to $75 per hour. For the work provided by a law student clerk, Mr. Cowan has not provided any itemization, and the work done by that clerk cannot be compensated.[2] Calculating the "lodestar" amount according to the above discussion results in a total of $52,905.76. *See* Appendix A.

■ I now turn to the proportionality issue. A majority of the Supreme Court has rejected a rule requiring proportionality of statutory attorney's fees to the damage award where constitutional rights are vindicated in a context of widespread, institutionalized racism. *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (4–1–4 decision) (award of $245,456.25 in attorney's fees not excessive merely because it exceeds the $33,350

---

**1.** Rule 68 describes procedures by which a party defending against a claim may make an offer of judgment against the defending party and provides that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."

**2.** Plaintiff also has provided no documentation or itemization of the requested $4,722.55 in costs; those costs therefore cannot be awarded.

damages award). In *Rivera*, four members of the Court rejected proportionality in any factual context. *See* 106 S.Ct. at 2694–97 (plurality opinion) (Brennan, *J.*, announcing the judgment of the Court). Justice Powell concurred in the judgment solely because the facts indicated that police hostility toward the Chicano community was institutionalized and the vindication of the rights of that community, in addition to the award of damages to the plaintiffs, had been served. *See id.* at 2700 (Powell, *J.*, concurring in the judgment). However, Justice Powell also indicated that when fees are fixed by a court in civil rights cases, "primary consideration" must be given to the actual damage award in cases where "private damages" are the principal benefit. *Id.* Justice Rehnquist's dissent, concurred in by three others, argued for a rule of proportionality in most circumstances, *see id.* at 2704 (Rehnquist, *J.*, dissenting), on the grounds that attorneys would, in the absence of a potential statutory fee award, not charge more than a case was worth, and a fee several times the damage award is unreasonable under *Hensley*, *see id.* at 2703–05. In *Rivera*, therefore, five Justices took the position that a court making a fee award in a civil rights case should generally take the size of the damage award into account.

In this case, an award of $52,905.76 in counsel fees is disproportionate to the $15,000 recovered in damages. Because, as discussed above, the instant case involved isolated discriminatory conduct by one Prudential employee, the considerations that led Justice Powell to reject proportionality in *Rivera* are absent.

*Rivera* clearly alters the law of this Circuit. In *DiFilippo v. Morizio*, 759 F.2d 231 (2d Cir.1985), the Second Circuit held in a fair housing act case that, where the damage award was only $2,250, a "lodestar" fee award of over $27,000 might be sustained if supported by a reasonable explanation of the hours spent, so long as the low damage award was typical of that genre of cases. *DiFilippo* stated that a court should make "an *ex ante* determination of whether the chance of a substantial judgment was sufficiently great when the case was brought to ensure retention of private counsel on a contingency basis whether or not a statutory fee award might be available." 759 F.2d at 234. The position taken with regard to proportionality by Justice Powell and the four dissenting Justices in *Rivera* suggests that a fee award of $27,000 is unreasonable, where the damage award was only $2,250. As the author of the *DiFilippo* opinion, I therefore am constrained to conclude that *DiFilippo* is at least in part no longer the law.

However, it is not necessary to read the five Justices in *Rivera* to reject entirely the view that fees awarded in civil rights cases may be calibrated so as to ensure that meritorious civil rights cases will be brought even where substantial uncertainty exists as to the size of the ultimate award. The five Justices may mean only that the "lodestar" approach is inappropriate where the "lodestar" amount is substantially disproportionate to the damage award. If so, then a district court may still make a fee award somewhat in excess of the damage award where it finds that such an excess is necessary to fulfill the congressional purpose of assuring that counsel can be retained. I find the instant matter to be such a case. Because there was never any serious prospect of a back-pay award absent success on the wafer-thin constructive discharge claim, this case probably would not have been brought absent the incentive of a statutory fee award. Moreover, the likely award of damages for emotional injury was quite unpredictable, and I find that limiting the fee award to an amount equal to, or less than, the actual damage award would more probably than not have deterred counsel from taking this case, particularly because a vigorous and skillful defense was inevitable. Taking into account the congressional purpose as well as the size of the damage award, I believe an appropriate award of fees is $20,000.

It is also possible, however, to read Justice Powell and the four dissenting Justices in *Rivera* to take the position that the size of the actual damage award is dispositive (absent benefit to a wider community) not-

withstanding deterrence of counsel in the future. Because the "lodestar" method focuses on the time actually spent on a case rather than the amount needed to encourage lawyers to take future civil rights cases, it can be argued that the actual damage award is similarly dispositive. Certainly, Justice Rehnquist's dissent can be read to limit most awards to what attorneys would be able to charge in an identical case but for the availability of a statutory fee award. If that is the case, the fee award here should be substantially less than the damage award. Under this method, I calculate a reasonable award to be $6,000.

For the reasons stated, I award fees in the amount of $20,000. It is so ordered. Dated at New Haven, Connecticut, this 8th day of January, 1990.

## APPENDIX A—FEE CALCULATIONS

Stage I (to Sept. 7, 1984)

| | | |
|---|---|---|
| Garrison: | 117.4 hrs. at $175/hr. = | $20,545.00 |
| | × 90% = | $18,490.50 |

Stage II (to Aug. 30, 1985)

| | | |
|---|---|---|
| Garrison: | 124.8 hrs. at $175/hr. = | $21,840.00 |
| Fey: | 226.75 hrs. at $ 85/hr. = | $19,273.75 |
| | | $41,113.75 |
| | × 70% = | $28,779.63 |

Stage III (to Dec. 15, 1986)

| | | |
|---|---|---|
| Garrison: | 30.55 hrs. at $175/hr. = | $ 5,346.25 |
| Fey: | 94.75 hrs. at $ 85/hr. = | $ 8,053.75 |
| | | $13,400.00 |
| | × 20% = | $ 2,680.00 |

Stage IV (to Sept. 21, 1987)

| | | |
|---|---|---|
| Garrison: | 30.05 hrs. at $175/hr. = | $ 5,258.75 |
| Fey: | 61.75 hrs. at $ 85/hr. = | $ 5,248.75 |
| | | $10,507.50 |
| | × 15% = | $ 1,576.13 |

Stage V (appeal)

| | | |
|---|---|---|
| Garrison: | 23.5 hrs. at $175/hr. = | $ 4,112.50 |
| Fey: | 2.0 hrs. at $ 85/hr. = | $ 170.00 |
| Newman: | 16.7 hrs. at $ 75/hr. = | $ 1,252.50 |
| | | $ 5,535.00 |
| | × 20% = | $ 1,107.00 |

| Stage VI (fee application) | | | |
|---|---|---|---|
| Fey: | 1.0 hrs. at $ 85/hr. | = | $ 85.00 |
| Newman: | 2.5 hrs. at $ 75/hr. | = | $ 187.50 |
| | × 100% | = | $ 272.50 |

| Total Award: | $18,490.50 |
|---|---|
| | 28,779.63 |
| | 2,680.00 |
| | 1,576.13 |
| | 1,107.00 |
| | 272.50 |
| | $52,905.76 |