Curtis COWAN, Plaintiff–Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Appellee.

No. 930, Docket 90–7865.

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1991.

Decided June 12, 1991.

David N. Rosen, New Haven, Conn. (Joseph D. Garrison, of counsel), for plaintiff–appellant.

Dean C. Berry, Washington, D.C. (Gibson, Dunn & Crutcher, of counsel), for defendant–appellee.

Before KEARSE, PRATT and McLAUGHLIN, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Plaintiff appeals the award of only $20,-000 in attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, entered in the United States District Court for the District of Connecticut, Ralph K. Winter, United States Circuit Judge, sitting by designation. The fee was awarded after a bench trial in an employment discrimination suit that resulted in a damage award of $15,000 for emotional distress. Following the prescribed "lodestar" approach, see *City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986), the district court initially calculated a reasonable attorney's fee to be $54,012.76, but then entered judgment for $20,000 in order to make the fee award more proportional to the damage award.

Plaintiff now claims that the district court erroneously interpreted *Rivera* as requiring proportionality between attorney's fees and damages. As a result, plaintiff claims, the district court incorrectly reduced the "lodestar" attorney's fee award. Plaintiff also claims that the district court overlooked, and therefore failed to allow, his proposed bill of costs which had been filed. We agree with the plaintiff on both

claims; therefore, we reverse the judgment and remand to the district court to award the reasonable "lodestar" fee of $54,012.76, together with costs to be fixed after reviewing plaintiff's proposed bill of costs.

## BACKGROUND

Plaintiff Curtis Cowan, who is black, brought an action against his former employer, defendant Prudential Insurance Company of America ("Prudential"), alleging that Prudential had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, by discriminating against him on the basis of race in a series of promotion decisions. For trial purposes, the issues of liability and damages were bifurcated. After a bench trial, the district court did not find any widespread discrimination at Prudential, but it did find that Prudential had violated Title VII and § 1981 when Cowan's superior failed to even consider Cowan for three promotions for which he was qualified. *Cowan v. Prudential Ins. Co.*, 703 F.Supp. 177 (D.Conn.1986). The district court awarded Cowan $15,000 in damages for emotional distress under § 1981, but did not award any backpay. *Cowan v. Prudential Ins. Co.*, 703 F.Supp. 196 (D.Conn.1987). On the first appeal, we affirmed as to both liability and damages. *Cowan v. Prudential Ins. Co.*, 852 F.2d 688 (2d Cir.1988).

The district court then turned to the task of determining attorney's fees and considered the problem of how the Supreme Court's decision in *Rivera* affected that determination. It specifically addressed the question of whether *Rivera* required some degree of proportionality between the fee award and the damage award.

The district court rendered alternative decisions because the law was "unclear as to the effect of the size of the damage award on the size of the permissible fee award". *Cowan v. Prudential Ins. Co.*, 728 F.Supp. 87, 89 (D.Conn.1990). The court first calculated a "lodestar" award of $54,012.76 for time spent by counsel on those issues on which the plaintiff prevailed. It then proceeded to fix an alterna-

tive fee award of $20,000 after holding that *Rivera* constrained the court to consider "both the size of the damage award and the congressional purpose of encouraging the prosecution of meritorious civil rights cases" in determining the final fee award. *Id.* Finally, it determined a second fee alternative of $6,000 by applying a strict rule of proportionality and taking into account "only the size of the actual damage award". *Id.* The district court entered judgment using the $20,000 alternative fee award.

The district court allowed no other costs, apparently unaware that plaintiff had filed a proposed bill of costs requesting $4,722.55.

## DISCUSSION

■ As a preliminary matter, we address plaintiff's claim for costs, which need not detain us long. The district court was unaware that the plaintiff had submitted any bill of costs. The record before us, however, clearly shows that the plaintiff had made the requisite submission. Since the matter was not brought to the district judge's attention, we remand the issue to the district court where the matter should be submitted for an appropriate determination of costs.

■ We now turn to the more complicated and difficult aspect of this appeal. The central issue is whether a reasonable attorney's fee, calculated through the "lodestar" approach after eliminating from the multiplicand all the hours spent by counsel on unsuccessful issues, may be reduced still further in order to achieve "proportionality" between the attorney's fee award and the damage award. Since the Supreme Court's decision in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), this question has not been squarely addressed by this court.

■ Section 1988 of Title 42 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Initially, a court must determine whether a plaintiff seeking attorney's fees is a "prevailing party". *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Cowan clearly prevailed in this case.

Once plaintiff is found to have prevailed, it remains for the district court to determine what is a "reasonable attorney's fee". The starting point for calculating a reasonable attorney's fee is to "multiply[ ] the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984); *see also Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

■ In this case, Cowan had originally requested fees totaling $84,970.75, plus costs of $4,722.55. The district court found, however, that Cowan's attorneys, in calculating the $84,970.75 figure, had not excluded a satisfactory number of hours for work done on unsuccessful claims and issues. After recalculating the reductions to reflect all the unsuccessful work, the court determined that $54,012.76 was the appropriate "lodestar" figure. We find no error in the district court's analysis and findings up to this point, for the allocation of fees between successful and unsuccessful claims necessarily lies largely in the discretion of the district court. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

Next, we deal with the issue of proportionality. We have previously considered the issue of whether a low damage award justifies the use of a negative multiplier in determining fees after a "lodestar" figure has been calculated. *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985). In *DiFilippo*, we rejected such a reduction of the "lodestar" amount if the only reason for the reduction was simply a low damage award. We stated: " '[A]warding attorney's fees in a manner tying that award to the amount of damages would subvert the statute's goal of opening the court to all who have meritorious civil rights claims.' " *Id.* (quoting *Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir.1984)).

The district court here believed, however, that "*Rivera* clearly alter[ed] the law of

this Circuit", *Cowan,* 728 F.Supp. at 93, and concluded that *DiFilippo* was no longer the law. It calculated a reasonable fee based on the "lodestar" approach, which under *DiFilippo* would have been the "presumptively appropriate" figure, but then reduced that figure, believing that *Rivera* made such a reduction necessary simply because the damage award was low.

This is where we disagree with the district court. Reducing the "lodestar" fee from $54,012.76 to $20,000 simply because plaintiff was unsuccessful in proving damages amounts to a double-discount against this prevailing plaintiff for his lack of monetary success. While the district court felt that *Rivera* required this downward adjustment, we conclude that no such command can be extracted from the four opinions in that case.

In *Rivera,* the Supreme Court addressed the specific question of whether an attorney's fee award that was eleven times the damage award was *"per se* 'unreasonable' within the meaning of the statute". *Rivera,* 477 U.S. at 564, 106 S.Ct. at 2689. The issue sharply divided the Court and produced an indecisive 4–1–4 decision, with one additional dissenting opinion. The ultimate result, however, was that five justices did approve àn attorney's fee award of $245,-456.25 even though the plaintiffs received only $33,350 in damages.

Four of the justices rejected a rule of proportionality in all situations. Justice Brennan, writing for the plurality, stated:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. * * * In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, *Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.*

*Id.* at 578, 106 S.Ct. at 2696 (Brennan, J., announcing judgment of Court) (emphasis added).

Justice Powell, who concurred only in the judgment of the Court, did so because he concluded that the district court's detailed findings of fact required affirmance. He wrote separately, however, and appears to limit his rejection of proportionality only to cases where the success of the plaintiff also serves the "public interest". *Id.* at 585, 106 S.Ct. at 2700 (Powell, J., concurring). He stated that it would probably be "the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Id.* at 586 n. 3, 106 S.Ct. at 2700 n.3 (emphasis in original). It was from this opinion that the district court inferred that proportionality is required in private civil rights cases.

Justice Rehnquist, who wrote a dissenting opinion joined by three other justices, disagreed that proportionality should be rejected under the circumstances of the *Rivera* case. *Id.* at 595, 106 S.Ct. at 2704–05. However, he never fully addressed the proportionality issue; instead, Justice Rehnquist's vote to vacate the fee award seems to depend on his conclusion that the district court clearly erred in determining the number of hours that should be included in calculating a reasonable attorney's fee. *Id.* at 588, 106 S.Ct. at 2700–01.

Chief Justice Burger, who joined in Justice Rehnquist's opinion, also wrote a dissent emphasizing his view that the district court's fee award "plainly constitutes a grave abuse of discretion which should be rejected". *Id.* at 588, 106 S.Ct. at 2701 (Burger, C.J., dissenting).

From these four opinions, the district court here concluded that "five Justices [the Rehnquist four plus Powell] took the position that a court making a fee award in a civil rights case should generally take the size of the damage award into account." *Cowan,* 728 F.Supp. at 93. Thus, upon finding that the reduced "lodestar" amount was disproportionate to the recovery for damages, and that "the considerations that led Justice Powell to reject proportionality in *Rivera* [we]re absent" in Cowan's case, *id.* at 93, the district court concluded that the "lodestar" had to be reduced still further. *Id.* The court stated: "The only

public interest to benefit from my decision was in furthering the general public interest in law enforcement. Otherwise, the benefit was entirely in Mr. Cowan's private recovery of $15,000." *Id.* at 91.

We disagree with the district court that the effect of *Rivera* is to change the law of this circuit, specifically the rule we adopted in *DiFilippo*. First, nothing in the statute or its legislative history requires, or even suggests, that attorney's fees should be proportional to damage awards, or that private civil rights cases should be distinguished from public civil rights cases. Even Justice Powell concluded: "Neither the decisions of this Court nor the legislative history of § 1988 support such a 'rule' [of proportionality]." *Rivera*, 477 U.S. at 585, 106 S.Ct. at 2699 (Powell, J., concurring). The language used by congress in the statute is inclusive and imposes only two conditions on the awarding of attorney's fees—that the plaintiff be a "prevailing party" and that the award be "reasonable". Moreover, congress's intent in enacting the attorney's fee provision was quite broad: "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429, 103 S.Ct. at 1988 (quoting H.R.Rep. No. 94–1558, p. 1 (1976)). U.S.Code Cong. & Admin.News 1976 p. 5908.

Second *Rivera* itself does not hold that if a civil rights plaintiff recovers only a private monetary sum, a fee award must be proportional to damages. Although there were four opinions, the actual holding of the case is clear—if plaintiffs win a lawsuit that has public interest overtones and the district court's findings support the fee awarded, no proportionality between the fee and damages is required even where the fee awarded is eleven times the amount of damages recovered. Beyond this narrow holding, however, *Rivera* provides no guidance. It does not speak to a situation such as ours, where the monetary damage recovery benefits a single individual.

Given, then, that proportionality is authorized neither by congress nor by the Supreme Court, we see no reason to abandon

the authority of *DiFilippo;* contrary to the district court's holding, we reaffirm the holding in *DiFilippo* as the law of this circuit: A presumptively correct "lodestar" figure should not be reduced simply because a plaintiff recovered a low damage award.

Further substantiation for our holding stems from a more recent case involving a similar issue, where the Supreme Court determined that an attorney's fee award under § 1988 need not be limited to the amount provided in a private contingent-fee arrangement entered into by the plaintiff and his counsel. *Blanchard v. Bergeron*, 489 U.S. 87, 90, 109 S.Ct. 939, 942–43, 103 L.Ed.2d 67 (1989). There, the Court observed:

> If a contingent-fee arrangement were to govern as a strict limitation-on the award of attorney's fees, *an undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation.* The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive or declaratory relief.

*Id.* at 95, 109 S.Ct. at 945 (emphasis added). The virtually unanimous *Blanchard* Court significantly quoted from Justice Brennan's plurality opinion in *Rivera:*

> "[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."

*Blanchard*, 489 U.S. at 96, 109 S.Ct. at 945–46 (quoting *Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694).

Although *Blanchard* involved the issue of contingent-fee arrangements as a ceiling on attorney's fee awards, we think that its reasoning and policies for rejecting such a cap are helpful when considering whether an attorney's fee must be proportional to the damages recovered. As did the eight justices in *Blanchard*, we "reject the notion" that plaintiff's civil rights action was

"nothing more than a private tort suit" benefitting only him. *Id.* Cowan has helped other employees at Prudential by exposing a discriminatory supervisor, and by making Prudential aware that it has to exert still greater efforts to protect its employees and society itself from future discriminatory behavior in its employment actions. Truly, in this case, "the result achieved is necessarily more than mere financial gain." *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Assn., Local 307 v. G & M Roofing and Sheet Metal Co., Inc.,* 732 F.2d 495, 503 (6th Cir.1984). We recall the sound language in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401, 88 S.Ct. 964, 965–66, 19 L.Ed.2d 1263 (1968) (emphasis added), where the Court considered another part of the Civil Rights Act and stated:

> When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II [prohibition against discrimination by public accommodations] suit is thus *private in form only.*

Given all of the reasons discussed above, we conclude that *Rivera* cannot properly be read to mean anything beyond its very narrow holding—that an award of attorney's fees eleven times the damages recovered by plaintiffs need not be reduced simply to make the fee award more proportional to the damage award under the circumstances in *Rivera.* Viewed in this light, we think that *Rivera* only reinforces our previous decision in *DiFilippo.* Although *Rivera* does leave many questions open about the future of attorney's fee issues, we again note the hazards of trying to predict how the Court would decide those open questions, and we decline at this time, to hold that because the circumstances in *Rivera* involved "widespread, institutionalized racism", only the same circumstances would justify disproportionality between the fee award and the damage award.

In short, *Rivera* does not require proportionality. The approach taken in *DiFilippo* is the correct one to the extent that we rejected a reduction of the reasonable "lodestar" fee simply because the damage award was low. Other circuits that have considered this issue after *Rivera* generally agree. *See Cunningham v. City of McKeesport,* 807 F.2d 49 (3d Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987); *Cobb v. Miller,* 818 F.2d 1227, 1234–35 (5th Cir.1987); *Ustrak v. Fairman,* 851 F.2d 983, 989 (7th Cir. 1988); *Cunningham v. County of Los Angeles,* 879 F.2d 481, 489 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990); *Williams v. Roberts,* 904 F.2d 634, 640 (11th Cir.1990).

Finally, we do not think it is sound, from a policy standpoint, to introduce into civil rights litigation, a dichotomy between private damage cases and public interest cases. Courts should not become involved in the task of weighing the public benefit generated by civil rights cases. Such weighing is inherently a subjective process and injects an unseemly appearance of unfairness into the judicial determination of attorney's fees. The legislative history of § 1988 seems to indicate that congress did not want to differentiate between private remedies and public ones: "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit ' "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." ' " *Rivera,* 477 U.S. at 575, 106 S.Ct. at 2694 (quoting H.R.Rep. No. 94–1558, p. 2 (1976) U.S.Code Cong. & Admin.News 1976, pp. 5908, 5909 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968))).

Civil rights suits brought to remedy private discrimination should not be given inferior status merely because the monetary benefits of winning accrue to one individual. Allowing proportionality reductions when a court determines that no public interest was served by a civil rights suit would discount the social value inherent in correcting all forms of discrimination, public or private. Proportionality is contrary to our national policy of encouraging the

eradication of every type of racial discrimination; it should not be tolerated.

Given our previous analysis, we of course reject the district court's second alternative fee determination of $6,000 based solely on the size of the actual damage award.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand for entry of a judgment awarding a reasonable attorney's fee for the "lodestar" amount of $54,012.76 together with costs to be determined after reviewing plaintiff's bill of costs. The district court shall include in its judgment interest from January 8, 1990 on the $54,012.76 in attorneys' fees and on whatever costs the district court may determine after reviewing plaintiff's bill of costs.