[Nos. A093438, A093990. First Dist., Div. Four. July 24, 2002.]

WILLIE M. GREENE, Plaintiff and Appellant, v.
DILLINGHAM CONSTRUCTION N.A., INC., Defendant and Appellant.

**COUNSEL**

Law Offices of Philip Edward Kay, Philip Edward Kay, Lawrence Anthony Organ; Rosen, Bien & Asaro, Sanford Jay Rosen and Andrea Asaro for Plaintiff and Appellant.

McPharlin, Sprinkles & Thomas, Linda Hendrix McPharlin and Paul S. Avilla for Defendant and Appellant.

**OPINION**

**RIVERA, J.**—Dillingham Construction N.A., Inc., appeals from a postjudgment order awarding fees and costs to Willie M. Greene in this California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; hereafter FEHA) action. It contends that the trial court abused its discretion in: (1) failing to apportion the fee award between Greene's successful claim and those claims on which he did not prevail, and (2) awarding fees for the period following Greene's rejection of Dillingham's settlement offer. In a cross-appeal, Greene argues that the trial court erred in denying his request for a multiplier. We affirm the award of fees but remand the matter to the trial court to reconsider Greene's request for a multiplier.

## I. FACTUAL BACKGROUND

This court previously decided the underlying action in this case. (*Greene v. Dillingham Construction N.A., Inc.* (Oct. 9, 2001, A090889) [nonpub. opn.].)

In that action, a jury, by special verdict, found in favor of Greene on his claim that he was subjected to racial harassment in violation of FEHA. The

jury awarded Greene $490,000 in emotional distress damages. It rejected Greene's retaliation and punitive damages claims. We affirmed the trial court's judgment on appeal.

In June 2000, Greene moved for an award of attorney fees pursuant to Government Code section 12965, subdivision (b). Dillingham did not contest Greene's entitlement to fees but argued that his request should be reduced by 60 percent because that amount related to fees incurred in prosecuting Greene's unsuccessful claims. It also argued that Greene's request should be reduced by the amount of fees and expenses incurred after Greene rejected a settlement offer made in conjunction with a mediation. The trial court concluded that Greene's claimed hours were reasonable "especially given the adjustments the Plaintiff has made in the exercise of billing judgment and to account for the lack of success on the retaliation claim and the issue of punitive damages." It rejected Dillingham's argument that the fee award should be reduced by fees incurred after Dillingham's settlement offer to Greene, adopting Greene's argument that the offer was not a statutory Code of Civil Procedure section 998 offer and that it was improper for the court to rely on an informal settlement offer to determine whether a fee award was appropriate. The court thus ordered fees in the amount of $1,095,794.55, representing $993,593.05 for work on the merits and $102,201.50 in fees for fees. The court denied Greene's request for a multiplier.

## II. DISCUSSION

### A. Dillingham's Appeal

#### 1. Amount of fee reduction for unsuccessful claims

■ The FEHA provides that "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ." (Gov. Code, § 12965, subd. (b).) In determining the fee award, the trial court must first determine "a 'lodestar' or 'touchstone' figure, which is the product of the number of hours worked by the attorneys and a reasonable fee per hour." (*Downey Cares v. Downey Community Development Com.* (1987) 196 Cal.App.3d 983, 994 [242 Cal.Rptr. 272]; *Serrano v. Priest* (1977) 20 Cal.3d 25, 48 [141 Cal.Rptr. 315, 569 P.2d 1303] (hereafter *Serrano III*).) The trial court then has the discretion to increase or reduce the lodestar figure by applying a positive or negative " 'multiplier' " based on a variety of factors. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322 [193 Cal.Rptr. 900, 667 P.2d 704]; *Serrano III, supra,* 20 Cal.3d at p. 49.) We review the trial court's decision on attorney fees under an abuse of discretion standard. (*Steele v. Jensen Instrument Co.* (1997) 59 Cal.App.4th 326, 331 [69 Cal.Rptr.2d 135].)

■ Dillingham first contends that the trial court abused its discretion in failing to consider any apportionment of attorney fees between Greene's claim for harassment and his claims for discrimination, retaliation and punitive damages. It argues that Greene's fee claim ignored the fact that he pursued a separate claim of intentional race discrimination up until the time of trial.

The record refutes Dillingham's argument. In submitting his fee request, Greene's attorneys first adjusted their billing hours "in the exercise of billing judgment," reducing the cost of their actual time billed by a total of $40,870. Greene also adjusted the claimed hours billed to account for the lack of success on his claims for retaliation and punitive damages, eliminating all time entries specifically addressed to either issue. Further, Greene reduced the lodestar by an additional 15 percent to reflect time that might not have been spent had he not pursued claims for retaliation and punitive damages. The trial court found the claimed hours were reasonable and that Dillingham's arguments for an additional apportionment of fees were without merit. We find no error.

Although it is appropriate to reduce a fee award when a plaintiff prevails on only one of his causes of action (see *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250 [261 Cal.Rptr. 520]), the trial court's order here did consider the results obtained in arriving at its fee award. Accordingly, the court awarded fees not for the actual hours billed, but for a reduced number of hours, including reductions for time spent on claims on which Greene did not prevail. The total adjustment to billed hours was greater than 20 percent.

The court also agreed with Greene's contention that the harassment and discrimination claims were so intertwined that a further allocation of fees between successful and unsuccessful claims was not possible because the claims were based on the same set of facts and course of conduct. The trial court was in the best position to understand the relationship between the claims and to determine whether time spent on a related claim contributed to Greene's objectives at trial. ■ (See *Downey Cares v. Downey Community Development Com., supra,* 196 Cal.App.3d at p. 997.) "Where a lawsuit consists of related claims, and the plaintiff has won substantial relief, a trial court has discretion to award all or substantially all of the plaintiff's fees even if the court did not adopt each contention raised." (*Ibid.*) ■ This rule is particularly apt here where Greene's claims of harassment and retaliation were based on the common core of facts that the presence of hangman's nooses in the workplace, including one with an effigy, created a hostile work environment. As Greene points out, his complaint alleged a

single cause of action for race discrimination and harassment. ▇ That he prevailed on only one theory under that claim is not dispositive.[1] "Attorneys generally must pursue all available legal avenues and theories in pursuit of their clients' objectives; it is impossible, as a practical matter, for an attorney to know in advance whether or not his or her work on a potentially meritorious legal theory will ultimately prevail." (*Sokolow v. County of San Mateo, supra,* 213 Cal.App.3d at p. 250.) ▇ In light of the strong interrelationship between Greene's claims, the court did not err in not further reducing its award of fees.[2]

### 2. *Postsettlement offer fees*

▇ Dillingham contends that the trial court abused its discretion in awarding attorney fees for the period of time after Greene rejected a settlement offer. It argues that the public policy of encouraging settlements as set forth in Code of Civil Procedure section 998 (section 998) supports an order denying an award of fees for attorney time expended after Greene rejected its settlement offer.

Dillingham relies on *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437 [78 Cal.Rptr.2d 913] in which the court held that a trial court could reduce the lodestar figure by the amount of fees incurred by the plaintiff after he declined an informal settlement offer. The court rejected the plaintiff's argument that the trial court's use of the informal offer undermined the public policy underlying section 998, reasoning, "the inapplicability of section 998 did not prevent the trial court from allowing the underlying policy concerns addressed by that section to guide its exercise of its discretion in this case. The basic premise of section 998 is that plaintiffs who reject reasonable settlement offers and then obtain less than the offer should be penalized for continuing the litigation." (*Meister,* at pp. 449-450.) The court concluded that irrespective of section 998, a trial court retained discretion to consider a party's rejection of a nonstatutory settlement offer "because it was based on the court's assessment of whether the hours which plaintiff's attorneys claimed to have expended on [the] litigation were 'reasonably spent.' " (*Meister,* at pp. 449, 452.) The court thus held that the trial court's reduction of the plaintiff's request of fees from $428,851.17 to

[1]Greene chose not to pursue a separate claim of discrimination based on a disparate treatment theory.

[2]We note nonetheless that Dillingham's attempt to shift 60 percent of the discovery conducted by Greene in the case to the theories on which he did not prevail is unconvincing. We reviewed the entire record in the underlying action, *Greene v. Dillingham Construction N.A., Inc., supra,* A090889, and are confident that contrary to Dillingham's characterization of the evidence, a majority of it was not related solely to the issues of retaliation and punitive damages.

$75,500.96, the latter amount reflecting fees incurred prior to the informal settlement offer, was justified since the plaintiff's recovery at trial of $27,500 was less than the offer of $44,495.54. (*Id.* at pp. 444-445, 453-455.)

We respectfully disagree with the court's reasoning in *Meister*. Section 998 is a cost-shifting statute that encourages settlement by providing a strong financial disincentive to a party who refuses a reasonable settlement offer. (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 330 [86 Cal.Rptr.2d 398]; *Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439 [77 Cal.Rptr.2d 459].) Under section 998, a plaintiff who refuses a reasonable settlement offer and then fails to obtain a more favorable judgment is penalized by the loss of postoffer costs and an award of costs in the defendant's favor. (*Mesa Forest Products*, at p. 330; *Heritage Engineering Construction*, at p. 1439.) Section 998's punitive provisions, however, have no application to an informal settlement offer made during the course of a confidential mediation session. Not only would disclosure of the settlement offer violate Evidence Code section 1119,[3] the penalties would frustrate the public policy favoring settlement that is served by mediation. In addition, where, as here, the settlement offer includes a confidentiality condition, it would be difficult for a judge to calculate the value to the litigants of vindication in a public forum, even if the judgment is ultimately less favorable monetarily than the settlement offer. (See *Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 795 [101 Cal.Rptr.2d 167] [in defamation action, the value of a settlement offer containing a confidentiality condition is too subjective for purposes of shifting costs under § 998].)

Moreover, the *Meister* court's holding ignores the procedural protections afforded recipients of statutory section 998 offers. An offer pursuant to section 998 may not be withdrawn prior to trial or within 30 days after the offer is made, whichever occurs first. (§ 998, subd. (b)(2).) These protections are not necessarily provided in an informal settlement offer. For example, here the settlement offer expired within 48 hours. This should be of special concern in cases such as this where a section 998 offer *was* made, but offering only a fraction of what was later offered informally.[4]

Finally, we note that federal courts that have considered the issue have concluded a court is not justified in reducing an otherwise appropriate fee

---

[3]Evidence Code section 1119, subdivision (b) prohibits the introduction into evidence of any writing "that is prepared for the purpose of, in the course of, or pursuant to, a mediation . . . ." The settlement offer here was made during the mediation and confirmed in writing immediately thereafter. The parties signed a confidentiality agreement as part of the mediation.

[4]Dillingham made a section 998 offer of $50,000 on February 23, 1999. In July 1999, in the course of mediation, Dillingham made a settlement offer of $1 million.

award simply because the party declined an informal settlement offer which exceeded his ultimate recovery. (*Berkla v. Corel Corp.* (9th Cir. 2002) 290 F.3d 983, 996; *Ortiz v. Regan* (2d Cir. 1992) 980 F.2d 138, 140-141; *Cooper v. State of Utah* (10th Cir. 1990) 894 F.2d 1169, 1172; *Clark v. Sims* (4th Cir. 1994) 28 F.3d 420, 424; *Cowan v. Prudential Ins. Co. of America* (D.Conn. 1990) 728 F.Supp. 87, 92, revd. on other grounds in (2d Cir. 1991) 935 F.2d 522, 523.) As the *Ortiz* court explained, "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded. Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing forward . . . ." (*Ortiz v. Regan, supra,* 980 F.2d at pp. 140-141.) The court indicated that a defendant has the option of making a formal settlement offer pursuant to rule 68 of the Federal Rules of Civil Procedure (28 U.S.C.) if he seeks to avoid liability for fees. (*Ortiz,* at p. 141.) Rule 68, like section 998, provides that a party that rejects a formal offer of settlement and then fails to obtain a more favorable judgment must pay the costs incurred after the offer. (Fed. Rules Civ.Proc., rule 68, 28 U.S.C.) "The very existence of Rule 68, with its precise requirements, creates a negative implication as to offers of settlement that do not comply with its terms. Moreover, it is not clear that a rule barring all attorney's fee awards for post-offer work where the ultimate judgment is below the offer would be consistent with [the public] purpose of creating incentives to the bringing of meritorious civil rights claims." (*Cowan v. Prudential Ins. Co. of America, supra,* 728 F.Supp. at p. 92.) Similarly, to reduce Greene's request for fees simply because he rejected an informal settlement offer would be inconsistent with the incentives provided in the FEHA to prosecute discrimination claims.

In sum, while we agree with the *Meister* court to the extent it recognized that the trial court has discretion to determine whether fees were reasonably spent, we decline to follow its holding that a trial court can consider an informal settlement offer in making that determination. The trial court here properly rejected Dillingham's request to reduce Greene's award by the amount of the postoffer fees.[5]

B. *Greene's Cross-appeal*

 Greene contends that the trial court erred in refusing to consider contingent risk as a factor in its decision not to apply a multiplier. We agree.

In FEHA cases, the trial court has the discretion to apply a multiplier or fee enhancement to the lodestar figure to take into account a variety of

---

[5]In any event, in this case the $1 million settlement offer was less than Greene's total "likely" recovery at the time of the offer, i.e., $490,000 plus discounted fees to date of $630,000 plus preoffer costs of $29,898.

factors, including the quality of the representation, the novelty and difficulty of the issues presented, the results obtained and the contingent risk involved. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 646 [71 Cal.Rptr.2d 632]; *Serrano III, supra,* 20 Cal.3d at pp. 48-49.) In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [104 Cal.Rptr.2d 377, 17 P.3d 735], a SLAPP (strategic lawsuit against public participation) action, our Supreme Court explained that the purpose of a multiplier "is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved *a contingent risk or required extraordinary legal skill* justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. . . . [¶] . . . [The multiplier] for contingent risk [brings] the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." (Italics added.)[6] The court further noted that applying a fee enhancement does not inevitably result in a windfall to attorneys: "Under our precedents, the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano III.* The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." (*Ketchum,* at p. 1138.)

In this case, the hearing on attorney fees was held before the decision in *Ketchum* was issued. During that hearing there was a lengthy colloquy between the court and counsel on the subject of whether the Court of Appeal in *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128 [74 Cal.Rptr.2d 510] and *Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th 629 had, in practical effect, eliminated contingent risk as one of the factors to consider in imposing a multiplier. Apparently the trial court concluded that, at least as to FEHA cases, this was the holding of *Weeks.* Having the benefit of the more definitive statement on the subject contained in *Ketchum,* we must disagree.

The *Weeks* court reversed the award of a multiplier, reasoning that it was not justified by the factors cited by the trial court. (*Weeks v. Baker &*

---

[6]Code of Civil Procedure section 425.16, the anti-SLAPP statute, contains a fee-shifting provision like that of the FEHA. The *Ketchum* court held that the lodestar adjustment method of *Serrano III* applies as well to SLAPP actions. (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1131.)

*McKenzie, supra,* 63 Cal.App.4th at pp. 1174-1176.) In discussing the contingent risk factor, the court stated, "the risk that Weeks's attorneys would not be compensated for their work was no greater than the risk of loss inherent in any contingency fee case; however, because of the availability of statutory fees [under FEHA] the possibility of receiving full compensation for litigating the case was greater than that inherent in most contingency fee actions. [¶] . . . [¶] . . . The contingent nature of the litigation, therefore, was the risk that Weeks would not prevail. Such a risk is inherent in any contingency fee case and is managed by the decision of the attorney to take the case and the steps taken in pursuing it." (*Id.* at pp. 1174-1175.) The same court decided *Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th 629 only three months before *Weeks.* In *Flannery,* another FEHA case, the court reaffirmed that contingent risk is a factor to be considered, as required by *Serrano III.* The court acknowledged that enhancement of the lodestar for contingent risk was not permitted under federal fee-shifting statutes and that the United States Supreme Court's criticisms of the contingent risk factor were persuasive but held it was bound to follow *Serrano III* and include the contingent nature of the case among the factors in determining whether to enhance the lodestar. The *Flannery* court nonetheless reversed the trial court's application of a multiplier on the basis that the trial court had not applied the correct standards in determining the amount of the award. (*Flannery,* at p. 647.)

Although the record is not as clear as it might be, the trial court appears to have concluded that it could not consider contingent risk as a factor in determining whether to apply a multiplier. The court's decision began by describing the "teachings of *Flannery* and *Weeks*" to include certain principles: "Fee enhancement is not appropriate *unless* the litigation results in great public value, involves complex factual issues or involves complex legal issues in which the state of the law is uncertain. [¶] Routine reliance on the risk of losing a lawsuit is not a valid consideration to enhance a fee in an ordinary action under FEHA. Risk of losing is no greater than the risk inherent in any personal injury contingent fee case. The availability of statutory fees means the likelihood of receiving full compensation is greater than most contingent fee cases." (Italics added.) The court then made specific findings that the case before it did not result in great public value and did not involve complex factual or legal issues. The court did not, however, make any finding as to whether the case involved contingent risk of a nature to justify a fee enhancement. From all of this language we interpret the trial court as having determined that, under the circumstances, *Weeks* and *Flannery* did not allow consideration of a fee enhancement on the basis that this was a contingent fee case. Because in *Ketchum* (issued after the trial court's decision) the Supreme Court has reaffirmed that contingent

risk is a valid consideration in determining whether to apply a fee enhancement in cases where attorney fees are authorized by statute, we must remand the matter to the trial court for it to exercise its discretion on whether a fee enhancement is merited in this case for contingent risk.

On remand, Greene bears the burden of proving that a fee enhancement is warranted (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1138), and the trial court is properly guided by the considerations set forth in *Ketchum, Weeks* and *Flannery.*

## III. Disposition

The order granting Greene's motion for fees in the amount of $1,095,794.55 is affirmed. The order is reversed insofar as it denies Greene's request for a multiplier, and the matter is remanded to the trial court with directions to consider whether to apply a fee enhancement for the contingent risk factor. Greene shall recover his costs, including reasonable attorney fees, on appeal.

Reardon, Acting P. J., and Sepulveda, J., concurred.

On August 21, 2002, the opinion was modified to read as printed above.