Filed 3/13/18; Modified and Certified for Pub. 3/29/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, et al.,<br><br>    Petitioners,<br><br>v.<br><br>PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA,<br><br>    Respondent;<br><br>THE UTILITY REFORM NETWORK et al.,<br><br>    Real Parties in Interest. | A151870<br><br>(California Public Utilities Commission Decisions 17-04-007, 17-11-038) |

## I.    INTRODUCTION

Following our decision in *New Cingular Wireless PCS, LLC v. Public Utilities Com.* (2016) 246 Cal.App.4th 784 (*New Cingular*), the California Public Utilities Commission (CPUC), on remand, issued Decision No. 17-04-007[1] and Decision No. 17-11-038[2] (collectively, the Remand Decisions), awarding intervenor compensation to The

---

[1] *Order Instituting Investigation on the Commission's Own Motion Into the Planned Purchase and Acquisition by AT&T Inc. of T-Mobile USA, Inc., and its Effect on California Ratepayers and the California Economy* (Apr. 6, 2017) Cal.P.U.C. Dec. No. 17-04-007 (2017 Cal.P.U.C. Lexis 152).

[2] *Order Instituting Investigation on the Commission's Own Motion Into the Planned Purchase and Acquisition by AT&T Inc. of T-Mobile USA, Inc., and its Effect on*

1

Utility Reform Network (TURN) and the Center for Accessible Technology (CforAT) in the same amounts that had been awarded in the decisions we vacated in *New Cingular*. AT&T now petitions for review of the Remand Decisions. For the reasons that follow, we grant the petition.

## II.   DISCUSSION

In *New Cingular*, we held as follows. "[S]o long as the advocacy of an intervenor claiming compensation contributes to a CPUC proceeding by 'assist[ing] the commission in the making of' any 'order or decision' ([Pub. Util. Code,] § 1802, subd. (i))[3] and that 'order or decision' is part of the 'final' resolution of the proceeding (§ 1804, subds. (c) & (e))—whether or not the proceeding is resolved on the merits—then the CPUC may 'determine[ ]' whether in its 'judgment' (§§ 1801.3, subd. (d), 1802, subd. (i)), the intervenor's contribution was 'substantial' enough to merit an award of compensation (§ 1803, subd. (a)).[4]  In this case, having made a properly supported finding that some position taken by TURN or CforAT was adopted in one or more of the many preliminary 'order[s] or decision[s]' it affirmed as part of its final disposition" of investigation No. 11-06-009 (Docket No. I11-06-009), we concluded it was within the CPUC's discretion to conclude that these intervenors were eligible for compensation. (*New Cingular*, *supra*, 246 Cal.App.4th at p. 819.)  But we also said "that discretion was not unlimited.  It was properly exercised only within the confines of Article 5, while respecting the limits of the statutory scheme.  Here, for example, to the extent the awards to TURN and CforAT were made based upon interim 'procedural recommendations' or for adoption of a contention only 'in part,' section 1802, subdivision (i) plainly limited the awardable compensation to 'all reasonable advocate's fees, reasonable expert fees, and other

---

*California Ratepayers and the California Economy* (Nov. 30, 2017) Cal.P.U.C. Dec. No. 17-11-38 (2017 Cal.P.U.C. Lexis 518).

[3] All further statutory references are to the Public Utilities Code.

[4] See Public Utilities Code, part I, chapter 9, article 5, section 1801 et seq. (Article 5).

reasonable costs incurred by the customer *in preparing or presenting that contention or recommendation*.' " (*New Cingular*, *supra*, at p. 819.)

Although we rejected the view of AT&T that intervenors are per se ineligible for compensation in cases ending without a decision on the merits, nowhere in our opinion in *New Cingular* did we suggest that, once CPUC exercised its discretion to find that TURN and CforAT respectively made a "substantial contribution" to some interim or procedural "order or decision" in Docket. No. I11-06-009, that, alone, was sufficient to justify awarding every penny TURN and CforAT claimed for their work in connection with the proceeding as a whole. (*New Cingular*, *supra*, 246 Cal.App.4th at pp. 819–821.) Applying *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, and its progeny, we explained that the CPUC's interpretation of Article 5 is entitled to "considerable deference," but in rejecting the CPUC's proffered construction of Article 5 as well as AT&T's, we were quite clear that considerable does not mean unchecked. (*New Cingular*, *supra*, at p. 818.) We saw the CPUC's approach to interpreting Article 5 as fundamentally flawed, resting as it did on the idea of "harmonizing" something within the statutory language that was not genuinely in conflict, a rationale so broad, in our view, that it allowed the CPUC to disregard express statutory limitations on awardable compensation. (*Id.* at p. 820.) On remand, as expected, the CPUC jettisoned its harmonization rationale, but seems to have focused on the fact we confirmed it has discretion to award intervenors' compensation under Article 5, while ignoring the limitations we identified. We said that, on remand, the CPUC needed to "anchor its rationale in its own factual findings and show how those findings fit into the statutory language" while avoiding the justification of fees and costs for reasons that "produce[] a range of discretion going well beyond anything claimed in . . . [any] prior administrative decisions since 1992." (*New Cingular*, *supra*, 246 Cal.App.4th at pp. 819–820.)

The Remand Decisions fail to bridge this gap in the record, choosing instead to patch it over with a new rationale that suffers from the same flaw we identified before. The CPUC has now taken the view that, so long as positions advocated by TURN and CforAT "would have" materially influenced a decision on the merits in Docket. No. I11-

3

06-009—had there been one—an award of 100 percent of the claimed fees and costs is reasonable. (Remand Decisions, *supra,* 2017 Cal.P.U.C. Lexis 518, at pp. *90–91; 2017 Cal.P.U.C. Lexis 152, at pp. *10, *27–28, *33.) In doing so, it makes no serious attempt to link with any specificity the fees and costs incurred to any of the many interim rulings, both procedural and substantive, that the record shows were adopted as part of the final resolution of Docket No. I11–06–009. While as a general matter we are prepared to accept the CPUC's discretionary determination that these intervenors contributed substantially to the overall record-making mission it sought to undertake in Docket No. I11–06–009, we do not agree that it may justify awarding the entirety of the amounts claimed by purporting to decide hypothetically whether those contributions "would have" influenced rulings or decisions that were never made. Not only is that reasoning just as broad as the "harmonization" rationale advocated by CPUC before, it ignores the express statutory limitation that, to be eligible for contribution, intervenors must have made some contribution to an actual "order or decision."

From the perspective of TURN and CforAT, it may not seem fair that, when all is said and done, they could end up having invested considerable uncompensated time and effort in the expectation that the issues presented in Docket. No. I11-06-009 would be decided on the merits. (See Response of Real Parties in Interest to Petition for Writ of Review at p. 27 ["Under Petitioners' interpretation, intervenors would bear the risk that exogenous events could render non-compensable the vast majority of the intervenors' work in a merger review investigation, without regard to the quality of the work or the Commission's receptivity toward their contentions and recommendations."].) Recognizing this potential for unfairness, in the mid-1980s the CPUC enunciated a rule of discretion applicable to "no merits decision" cases in *The Environmental Defense Fund Requests Compensation for Its Participation in SoCal Edison Co.'s Application for a Certificate for the Harry Allen/Warner Valley Energy System* (1981) 7 Cal.P.U.C.2d 75 [1981 Cal.P.U.C. Lexis 370] (*Allen/Warner*) that permitted it to grant compensation based upon wide-ranging considerations of equity. What the CPUC overlooks in the detailed history we traced in *New Cingular* is that, apparently due to compromise and the

4

need to balance competing priorities, the Legislature was unwilling to go that far in the 1992 amendments. It did not simply codify the *Allen-Warner* rule.

In Article 5, as amended in 1992, the Legislature blessed the concept of using a CPUC determination of substantiality as the threshold trigger for intervenor compensation eligibility, but confined the discretion it conferred by tethering the amounts awardable to objectively successful advocacy. Simply put, the requirement that compensable work must be traceable to some "order or decision" appears to be a statutory measure of whether an intervenor claiming compensation achieved some degree of advocacy success. Under this scheme—contrary to AT&T's position in *New Cingular*—the "order or decision" need not be on the merits; it may have been an interim decision that was adopted as part of the final resolution of the proceedings; and it may be on "procedural" matter only. But as we explained at the end of our opinion in *New Cingular*, contrary to the position the CPUC, TURN and CforAT take here, by the plain terms of the statute there must be some demonstrable link between a position the intervenor took and a specific "order or decision" adopted by the CPUC.

The CPUC insists its "decision to award compensation to TURN and CforAT for their procedural and substantive contributions to the OII [order instituting investigation] proceeding is supported by Article 5's policy rationale set forth in section 1801.3(b) (that the statute be administered in a manner that encourages the effective and efficient participation by all stakeholders)." (Answer of Respondent to Amended Petition for Writ of Review at p. 27.) TURN and CforAT, for their part, emphasize that, if AT&T's reading of our *New Cingular* opinion is correct, it would "strictly limit the availability of compensation [and] would render the bulk of the intervenors' work ineligible, without allowing for any exercise of the Commission's judgment or discretion. [¶] Such an outcome," according to TURN and CforAT, "would be particularly inappropriate here, given that the favorable procedural rulings that were issued by the Commission were essential to intervenors' ability to perform the bulk of their work associated with the analysis of and development of mitigation measures for a proposed merger of this

5

magnitude." (Response of Real Parties in Interest to Petition for Writ of Review at p. 22.)

It is an overstatement to say the position AT&T now urges would blot out all agency discretion. As we read Article 5, the CPUC retains ample discretion to assess whether a given type of contribution made by a given intervenor counts as "substantial" within the particular procedural and substantive setting of a given proceeding. And in exercising that discretion, it is perfectly acceptable, in our view, for the CPUC to recognize that even small victories may have a major impact on the course of a proceeding. At the same time, however, by the plain statutory terms of Article 5, there must still be some objective indication of successful advocacy— hence the need to link a position taken to some "order or decision." As for the contention by TURN and CforAT that AT&T's position would lead to an undesirable "outcome," we are not here concerned with "outcomes." We are concerned with the meaning of the statutory language the Legislature enacted. If, as a policy matter, the "order or decision" limitation hinders the CPUC's ability to promote the overall goal of incentivizing intervenor participation in CPUC proceedings in an optimal way, that issue is for the Legislature to address.

Accordingly, we shall grant AT&T's petition and vacate the awards made in the Remand Decisions. The Remand Decisions do make an attempt to identify orders or decisions adopted by the CPUC and link them to contentions or recommendations advocated by TURN and CforAT (although in the case of CforAT it specifically identifies only the single order we were able to discern in our review of the awards vacated in *New Cingular*, *supra*, 246 Cal.App.4th at p. 794, fn. 8.). What is lacking is an effort to trace the amounts of fees and costs incurred to the specific orders or decisions so identified. If it is not feasible to trace time and costs billed by TURN and CforAT with precision to an "order or decision," the CPUC must make an effort to discount the claimed amount for that lack of precision—allocating the claimed time and cost in reasonable proportion to the amounts these intervenors claimed for the proceedings as a whole—rather than simply accept 100 percent of what is claimed on the ground all of

6

work done by TURN and CforAT, in gross, hypothetically "would have" influenced a decision on the merits that was never made.

### III. DISPOSITION

AT&T's petition for a writ of review is granted, the Remand Decisions are vacated, and the matter is remanded for further proceedings consistent with *New Cingular* and with this opinion.

 

 

 

 

 

 

                                                   _____

                                                   Streeter, J.

We concur:

_____

Ruvolo, P.J.

_____

Schulman, J.[*]

---

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A151870/*New Cingular Wireless PCS, LLC v. Public Utilities Com.*

Filed 3/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, et al., <br><br>     Petitioners, <br><br> v. <br><br> PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA, <br><br>     Respondent; <br><br> THE UTILITY REFORM NETWORK et al., <br><br>     Real Parties in Interest. | A151870 <br><br> (California Public Utilities Commission Decisions 17-04-007, 17-11-038) <br><br><br> ORDER MODIFYING OPINION AND GRANTING PUBLICATION [NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on March 13, 2017, be modified as follows:

1. On page 5, in the first full sentence which reads "It did not simply codify the *Allen-Warner* rule," change "*Allen-Warner*" to "*Allen/Warner*," so the sentence reads:

> It did not simply codify the *Allen/Warner* rule.

There is no change in the judgment.

In addition, the opinion has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

1

(Ruvolo, P.J., Schulman, J.* and Streeter, J. participated in the decision.)

Dated: _____                    _____, P.J.

_____

* Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A151870/*New Cingular Wireless PCS, LLC v. Public Utilities Com.*

New Cingular Wireless PCS v. Public Utilities Com. (A151870)


Original Proceedings in writ review of California Public Utilities Commission Decisions 17-04-007, 17-11-038.

Attorneys:

Mayer Brown, J. Tyson Covey, Hans J. Germann; AT&T Services, Inc., J. Scott Paisley, and David P. Discher for Petitioners.


California Public Utilities Commission, Arocles Aquilar, Helen W. Yee, and Maria L. Bondonno for Respondent.


The Utility Reform Network, Robert Finkelstein; Center for Accessible Technology, Melissa W. Kasnitz for Real Parties in Interest.