Filed 10/29/21

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY, | D077731 |
| Plaintiff and Appellant, | (San Diego Super. Ct. No. 37-2016-00041750-CU-MC-CTL) |
| v. | |
| RICARDO LARA, as Insurance Commissioner, etc., et al. | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Hogan Lovells, Vanessa O. Wells, Victoria C. Brown, Erin R. Chapman, Kirti Datla, and Katherine B. Wellington for Plaintiff State Farm General Insurance Company.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Tamar Pachter, Assistant Attorney General, Michael D. Gowe and Cara M. Porter, Deputy Attorneys General, for Defendant Ricardo Lara in his official capacity as Insurance Commissioner of the State of California.

Strumwasser & Woocher, Michael J. Strumwasser, Bryce A. Gee, Julia G. Michel; Harvey Rosenfield and Pamela Pressley, for Defendant Consumer Watchdog.

INTRODUCTION

State Farm General Insurance Company (SFG) appeals from an order awarding attorney fees to intervenor Consumer Watchdog (CW), in a dispute over documents SFG designated as confidential in a rate hearing under Proposition 103 (Ins. Code, § 1861.01 et seq.).[1]  After the administrative law judge (ALJ) denied SFG's motion to seal, SFG sought writ relief from the superior court, which CW and the Insurance Commissioner successfully opposed.  CW then moved for fees under section 1861.10, which provides for reasonable advocacy fees to a consumer representative that makes a substantial contribution to the adoption of an order.  The court awarded CW's requested fees, and SFG appealed.

SFG contends the fee motion was untimely, and the fee award was inconsistent with the statutory requirements and an abuse of discretion.  We reject these arguments and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Proposition 103*

Proposition 103 was approved by voters in November 1988, and made numerous, fundamental changes to insurance regulation in California. (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 812 (*Calfarm*).)  Its stated purpose was "to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable Commissioner, and to ensure that insurance is fair, available, and affordable for all Californians."  (Stats. 1988, Prop. 103, uncodified § 2 ["Purpose"]; see also uncodified § 8, subd. (a) ["This Act shall be liberally construed and applied in order to fully promote its underlying purposes."].)

---

[1]    Further statutory references are to the Insurance Code unless noted.

Proposition 103 provides for public participation, including through public notice (§§ 1861.05, subds. (c)-(d), 1861.06), hearings (§§ 1861.055, 1861.08), and, relevant here, inspection (§ 1861.07). (See § 1861.07 ["All information provided to the commissioner pursuant to this article shall be available for public inspection, and the provisions of Section 6254(d) of the Government Code and Section 1857.9 of the Insurance Code shall not apply thereto."].) Anyone may intervene in a rate proceeding (§ 1861.10, subd. (a)), and consumer representatives can recover reasonable advocacy fees for a substantial contribution to an order, regulation, or decision by a court or the Commissioner. (§ 1861.10, subd. (b) (hereafter, 1861.10(b)).) The Commissioner has issued regulations for awarding advocacy fees for Commissioner proceedings. (Cal. Code Regs., tit. 10, § 2662.1, et seq.)[2] We discuss section 1861.10(b) and the regulations *post*.

B.    *Rate Hearing*

SFG filed an application to increase rates in December 2014. CW, a nonprofit organization, intervened in the proceeding.[3] The ALJ held a lengthy rate proceeding, which culminated in a rate order in November 2016. That order is the subject of a separate appeal. (*State Farm Gen. Ins. Com. v. Lara* (October 29, 2021, D075529).)

In August 2015, the parties had entered a stipulated protective order to "facilitate discovery and the free exchange of information . . . ." The order permitted the parties to designate documents as confidential and required them to move to seal those materials permanently. SFG subsequently filed a

---

[2]    Further regulation references are to these regulations unless noted.

[3]    Another nonprofit intervenor, Consumer Federation of California, is not a party to this appeal.

3

motion to seal 39 exhibits and related testimony. SFG argued its documents were properly sealed, including based on trade secrets, and asserted four main legal arguments: (i) section 1861.07 does not apply to documents submitted in rate hearings; (ii) documents submitted with an Own Risk and Solvency Assessment (ORSA) report are confidential; (iii) the Insurance Holding Company System Regulatory Act (Holding Company Act or HCA) and analogous Illinois law require submission of certain information and mandate it be kept confidential; and (iv) estoppel applied based on the protective order. The Department of Insurance (Department) and CW opposed the motion. CW's brief spent 13 pages addressing why specific documents and testimony were not entitled to protection.

The ALJ denied SFG's motion to seal. The ALJ found in part that even if trade secret protection applied to rate hearings under Proposition 103, SFG had not "met its burden in demonstrating the elements required for trade secret protection" including because it did "not identify the nature of the harm threatened by public disclosure of most documents." It further found public interest would justify disclosure regardless.

C.     *Court Proceedings*

In November 2016, SFG filed a petition for writ of mandate to the superior court, in which it also sought declaratory relief. SFG included CW as a respondent, because it possessed the sealed documents as a rate hearing participant and this would "ensure the effectiveness of any orders" issued by the superior court.

SFG advanced its arguments from the rate hearing, regarding section 1861.07, ORSA, the HCA, and estoppel. SFG also argued the ALJ's findings were insufficient, including because it "[did] not make findings as to the confidential status for the various records . . . ." SFG cited *Topanga*

4

*Association for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 (*Topanga*) and *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 516 (*EPIC*), among other cases.  SFG further contended there was "no contest[]" to its evidentiary showing in any event, explaining it "submitted evidence sufficient to make a prima facie case for sealing"; "no party submitted any evidence in response"; and the Department "more or less conceded the issue," while CW "made some conclusory arguments and asserted a non-existent right to later address on an evidentiary basis."

The Commissioner and CW filed separate briefs opposing SFG's petition.  On section 1861.07, ORSA, the HCA, and estoppel they made consistent, but not identical, arguments.  On the ALJ findings, the Commissioner argued the "ALJ did, in fact, consider whether SFG's documents contained trade secrets," and did not find SFG " 'met its burden in demonstrating the elements required for trade secret protection.' "  He also noted the ALJ "specifically pointed out fatal deficiencies in SFG's trade secret claim, including that SFG did 'not identify the nature of the harm threatened by public disclosure of most documents.' "

CW likewise noted the nature of the harm finding, but also addressed the ALJ finding regarding the public's interest in disclosure and several other points as well.  For example, CW disputed SFG's argument that the ALJ findings were inadequate, and addressed its authorities in doing so; it

5

explained agency findings must "bridge the analytic gap" (*Topanga*, *supra*, 11 Cal.3d at p. 515), but "do not need to be extensive or detailed" (*EPIC*, *supra*, 44 Cal.4th at p. 516), and argued the ALJ's findings were sufficient. CW also disputed SFG's assertion that there was any concession as to the sealing of specific records, explaining its brief "contained an entire section spanning 13 pages titled 'Arguments Regarding Specific Documents and Testimony,' which discussed in detail why each specific record was not entitled to confidential treatment." CW further argued, inter alia, that SFG had not "even attempted to present argument why each specific record is entitled to be sealed."

In January 2019, the superior court issued an order denying the petition for writ of mandate, because SFG had not established the ALJ "abused his discretion in finding that the documents were not protected from disclosure." The court did not address section 1861.07, explaining that if the ALJ did not abuse his discretion, "whether or not he was also correct in finding the documents could not be sealed is immaterial." The court then addressed the documents, explaining in part:

> "[SFG's] opening brief does not attempt to demonstrate that any of the 39 exhibits at issue are trade secret. Instead, [SFG] argues that the finding is deficient because it fails to 'set forth findings to bridge the analytical gap between the raw evidence and ultimate decision or order.' *Topanga*[, *supra*, 11 Cal.3d at p. 515]. [SFG] contends that respondents did not contest its evidentiary showing and essentially conceded the issue. CW says its opposition brief below contained 13 pages which discussed why each record was not entitled to confidential treatment. [Citation.] [¶] Findings 'do not need to be extensive or detailed.' [*EPIC*, *supra*, 44 Cal.4th at p. 516.] . . . . Here, the issue of sealing was extensively briefed and argued by the parties. The applicable standard for a trade secret is relatively straight-forward. The ALJ had the benefit of the parties' briefing,

6

the documents at issue, and argument. Under these circumstances, the ALJ's finding was sufficient."

The court also rejected SFG's arguments under ORSA and the HCA.

In February 2019, SFG moved ex parte for a status conference on its declaratory relief claim, asserting there was an "existing controversy" over section 1861.07 and proposing a bench trial. CW and the Commissioner opposed the request; CW contended "the case is over and ready for judgment." At the ex parte hearing, the superior court requested briefing, which each party filed. In June 2019, SFG filed objections to the judgment, including because the court had not addressed declaratory relief, and CW objected. At a hearing that month, the court overruled SFG's objections and declined to hold further proceedings, explaining its prior findings resolved the petition. The court entered judgment, and the Commissioner filed notice of entry of judgment on July 12, 2019.

In August 2019, the superior court signed the parties' "Stipulation To Extend Time For Filing Any Motion For Attorneys' Fees And Expenses By Consumer Watchdog." The stipulation indicated the deadline under California Rules of Court, rule 3.1702 would be September 10, 2019, and the other parties agreed to an extension of "60 days after the expiration of the time for filing a notice of appeal."[4]

In September 2019, SFG filed a notice of appeal from the judgment. After obtaining party input, this court dismissed the appeal as untimely the following month. We stated the January 2019 order "denying petition for writ of mandate effectively disposed of each of [SFG's] causes of action and was therefore final and appealable." SFG filed a petition for review with the California Supreme Court.

_____

[4]     Further rule references are to the California Rules of Court.

On November 8, 2019, CW moved for $649,048.69 in attorney fees, arguing it made a substantial contribution to the superior court's order and judgment denying SFG's petition and that its requested fees were reasonable. In December 2019, the superior court ordered entry of a stipulated briefing schedule filed by the parties, stating "good cause appear[ed] . . . ." The stipulation noted CW filed its fee motion "pursuant to the stipulated order to extend time to file an attorney's fees motion" entered in August 2019, and set opposition and reply briefing dates. In late January 2020, SFG filed its opposition, arguing in part that the motion was not timely. In early February 2020, the California Supreme Court denied review in the sealing merits appeal. CW filed its reply brief later that month.

The superior court heard CW's fee motion the same month. At the hearing, SFG's counsel argued in part that CW's contribution was not proportional to $685,000, and the court asked, "What is it proportional to?" Counsel responded it was "not the kind of issue we would address by going to their bills," "you have to look more at their total lodestar," and SFG "would put it at not more than 25 percent of the lodestar . . . ."

In April 2020, the superior court granted CW's fee request, declining only additional fees for the reply brief and hearing. First, the court concluded the motion was timely. It rejected SFG's argument that "if the January [2019] order triggered the time for filing an appeal, then it also triggered the time for filing a fee motion," citing *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 466 (*Carpenter*). The court further noted the "parties *stipulated* to extend the deadline . . . and reiterated this stipulation in their briefing schedule"; the court "adopted the . . . stipulations"; and SFG did not provide authority "that these stipulations should not be honored."

8

Next, the superior court determined CW made a substantial contribution to the court's decision:

> "Although CW and the Commissioner addressed [SFG's] arguments, their briefs are not carbon copies of each other. Ultimately, the [c]ourt found it unnecessary to address [SFG's] primary argument that [section 1861.07] did not apply to the documents. Instead, the [c]ourt relied heavily on CW's argument that, independent of section 1861.07, [SFG] failed to show that the documents sought to [be] sealed were entitled to trade secret protection. [Citation.] The Commissioner devoted a few sentences to his argument that [SFG] failed to meet its burden to show the documents contained trade secrets. [Citation.] Significantly, CW cited to a 13-page section of the record where it discussed why each record was not entitled to protection. [Citation.] CW also addressed [SFG's] argument that the ALJ failed to make specific findings as to each record. [Citation.] The [c]ourt has no difficulty in finding that CW made a substantial contribution."

Finally, the superior court determined CW's fees were reasonable, finding CW submitted time records to show the work done by its counsel and their hourly rates. The court explained the "party challenging fees as excessive must point to the specific items challenged," not just make general arguments; it had rejected SFG's argument that CW was not entitled to any fees; and SFG did not argue CW's rates were excessive. SFG appealed.[5]

---

[5]     SFG moves for judicial notice of a Department chart reflecting section 1861.10(b) awards; its petition for review following dismissal of its sealing merits appeal, and the Commissioner's answer; a superior court order granting SFG's writ in its rate order appeal; and a superior court order staying SFG's petition for relief as to the fee award in the rate case. We deny judicial notice of the Department chart, as other awards are irrelevant to the issues before us. (*Sup. Ct. v. Cty. of Mendocino* (1996) 13 Cal.4th 45, 59, fn. 7 [denying judicial notice of irrelevant material].) We grant the other requests

DISCUSSION

SFG argues the superior court erred in granting CW fees because the fee motion was untimely; its award was inconsistent with the statute's requirements for "substantial contribution[s]" and its purported limits on "reasonable . . . fees"; and the award accordingly was an abuse of discretion. We conclude SFG does not establish any error by the superior court.

A.    *Applicable Law*

1.    *Advocacy Fees and Fee Awards Generally*

The basis for advocacy fees under Proposition 103 is section 1861.10(b), which provides:

> "The commissioner or a court shall award reasonable advocacy and witness fees and expenses to any person who demonstrates that (1) the person represents the interests of consumers, and, (2) that he or she has made a substantial contribution to the adoption of any order, regulation, or decision by the commissioner or a court.  Where such advocacy occurs in response to a rate application, the award shall be paid by the applicant."

The parties agree the regulations for advocacy fees for Commissioner proceedings are instructive, but not binding.  Under these regulations:

> " 'Substantial Contribution' means that the intervenor substantially contributed, as a whole, to a decision, order, regulation, or other action of the Commissioner by presenting relevant issues, evidence, or arguments which were separate and distinct from those emphasized by the Department of Insurance staff or any other party, such that the intervenor's participation resulted in more relevant, credible, and non-frivolous information being available for the Commissioner . . . ."  (Reg. § 2661.1, subd. (k).)

---

to the extent they provide relevant procedural context.  (Evid. Code, §§ 452, subd. (d), 459.)

10

A section addressing requirements for awards further provides that "[t]o the extent the substantial contribution . . . duplicates the substantial contribution of another party to the proceeding . . ., the petitioner's, intervenor's or participant's compensation may be reduced." (Reg. § 2662.5, subd. (b); see *ibid*. [participation by Department staff does not preclude award, "so long as the . . . substantial contribution . . . does not merely duplicate" their participation]; *ibid*. [Commissioner will consider if there were "relevant issues, evidence, or arguments . . . separate and distinct" from those by other parties or Department staff].)

In general, determination of a reasonable attorney fee award "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*Ibid*.; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*) [factors for adjustment include "novelty and difficulty of the questions involved"]; *Graciano v. Robinson* (2006) 144 Cal.App.4th 140, 154 (*Graciano*).)

2.      *Statutory Interpretation*

" 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of

11

the legislative purpose.' [Citation.] At the same time, 'we do not consider . . . statutory language in isolation.' [Citation.] Instead, we 'examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts.' [Citation.] Moreover, we ' "read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' " (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 (*Garamendi*).)

"If the statutory language is clear and unambiguous, then we need go no further. [Citation.] If, however, the language is susceptible to more than one reasonable interpretation, then we look to 'extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 (*Hoechst*).)

3.      *Standard of Review*

In general, we "review attorney fee awards on an abuse of discretion standard." (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" '—meaning that it abused its discretion." (*PLCM, supra,* 22 Cal.4th at p. 1095; see *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 577 [fee award "will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence"].)

De novo review of an attorney fee order " 'is warranted where the determination of whether the criteria for an award of attorney fees . . . have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *Save Our Heritage Org. v. City of San Diego* (2017) 11 Cal.App.5th 154, 160 [accord].)

B.      *Timeliness of Fee Motion*

We begin with SFG's argument that the fee motion was untimely, and we reject it.

1.      *Court Rules*

Rule 3.1702 provides that a "notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court . . . must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case . . . ." (Rule 3.1702(b)(1).) Rule 8.104(a)(1) requires a notice of appeal to be filed within 60 days of service of notice of entry of judgment, or 180 days after entry of judgment, and rule 8.104(e) states, " 'judgment' includes an appealable order if the appeal is from an appealable order." Rule 8.108 addresses extension periods and is not at issue.

The parties may "by stipulation filed before the expiration of the time allowed under [Rule 3.1702](b)(1), extend the time" until "60 days after the expiration of the time for filing a notice of appeal in an unlimited civil case . . . ." (Rule 3.1702(b)(2)(A).) In addition, "[f]or good cause, the trial judge may extend the time" in "the absence of a stipulation or for a longer period than allowed by stipulation." (Rule 3.1702(d); see *Robinson v. U-Haul Co. of Cal.* (2016) 4 Cal.App.5th 304, 327 (*Robinson*) [trial court's "finding of 'good cause' is generally reviewed deferentially, solely for abuse of discretion"].)

13

2.    *Analysis*

The superior court properly determined CW's fee motion was timely. After entry of the January 2019 order, which this court would later determine to be the appealable order on writ relief, SFG continued to pursue declaratory relief over the objection of CW and the Commissioner. In July 2019, the court ruled its prior findings resolved the petition and entered judgment. Notice of entry was filed on July 12, 2019, which made any appeal from judgment, and thus any fee motion for "services up to and including the rendition of judgment," due by September 10, 2019 under rule 3.1702(b)(1). However, consistent with rule 3.1702(b)(2)(A), the parties stipulated to give CW an additional 60 days to file its motion, until November 12, 2019. CW filed its motion on November 8, 2019. The parties affirmed the existence of their stipulation in a December 2019 stipulated briefing schedule, which the superior court entered for "good cause." To the extent any question as to timeliness remained, we can infer from this stipulation entry and the court's later finding that the fee motion was timely that the court found good cause for any additional time needed. (Rule 3.1702(d); cf. *Robinson, supra*, 4 Cal.App.5th at p. 326 [court may grant extension of time even if fee motion is "not filed until after the deadline . . . under Rule 3.1702"].)

SFG maintains CW's fee motion was untimely, because we purportedly concluded the January 2019 order was the judgment in our dismissal order, which became law of the case, and CW was required to seek fees at the time notwithstanding the stipulations. We disagree.

First, SFG's reliance on law of the case is misplaced. " ' "[L]aw of the case" deals with the effect of the first appellate decision on the subsequent retrial or appeal: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and

14

makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491, italics omitted.) SFG does not establish law of the case can be based on a dismissal order. (Cf. *ABF Capital Corp. v. Grove Properties Co.* (2005) 126 Cal.App.4th 204, 212 [rejecting dismissal of prior appeal as law of the case; "The order dismissing the earlier appeal was not an opinion, and it was not based upon a principle necessary to the substantive resolution of this case"].) Even if it could, the dismissal order and fee motion involve different issues. In the former, we concluded the January 2019 order was the "appealable order" for appeal timeliness purposes, because an order on a petition for writ of mandate effectively resolving all causes of action is final and appealable. (*Bettencourt v. City & County of San Francisco* (2007) 146 Cal.App.4th 1090, 1097-1098.) We did not state it was a "final judgment," as SFG suggests, and even if we had, we would not have meant it was for all purposes. (Cf. *id.* at p. 1097 [order "constitutes a final judgment *for the purposes of this appeal*" (italics added)].) Here, the issue is whether CW timely sought fees. The case cited by SFG, *People v. Yokely* (2010) 183 Cal.App.4th 1264, confirms the issues must be the same. (*Id.* at p. 1274 [law of the case argument failed, because issue as to "admissibility of [the] in-court identification was not the same issue previously determined by the district court"].)

Second, SFG does not establish the stipulations would be ineffectual, regardless. SFG argues that parties cannot stipulate to extend time more than 60 days beyond the time to appeal. Its own authority here makes clear the time limits are not jurisdictional, just mandatory. (*Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 426.) Further, the superior court can grant additional time for good cause (rule 3.1702(d)), and as discussed *ante*, we can

15

infer it found good cause for any additional time needed.  That finding would have been reasonable, given SFG's apparent cooperation with fee briefing until late January 2020, when it had nearly exhausted its efforts to pursue its sealing merits appeal.  (Cf. *Robinson*, *supra*, 4 Cal.App.5th at p. 327 ["In the context of a motion to extend time under rule 3.1702(d), we should pay special deference to the trial court's view, which was informed by its personal interactions with counsel."].)

Third, SFG's criticism of *Carpenter*, *supra*, 151 Cal.App.4th at p. 465 and *Crespin v. Shewry* (2004) 125 Cal.App.4th 259 is neither persuasive, nor compels a different result.  *Crespin* rejected a challenge to postjudgment fees based on former rule 870.2 (now rule 3.1702), reasoning it covered a different subject from the appeal rules and "merely borrow[ed] the time limits," not appealable orders as triggering judgments.  (*Crespin*, at pp. 266, 269; *id*. at p. 267 [party focused on word "judgment" in phrase " 'for services up to and including the rendition of judgment' " in rule 870.2, and "ignore[d] the . . . words that immediately precede it"].)  *Crespin* noted a contrary approach would "promote piecemeal litigation over fees, which the drafters . . . wanted to avoid."  (*Crespin*, at p. 266.)  *Carpenter* applied this reasoning to affirm fees requested on remand in an anti-SLAPP (strategic lawsuit against public participation) case.  (*Carpenter*, at p. 465; *id*. at p. 468 [rule's history reflected " 'outside' time limit . . . was intended to be entry of a final judgment"].)  Although these cases involve different procedural contexts, they remain instructive.  Legal services did continue "up to and including the rendition of judgment"; SFG continued to pursue declaratory relief, and CW's attorneys continued to work.  Had CW moved for fees after the January 2019 order, it would have had to seek fees again.  In any event, even if these cases do not aid CW, the motion would be timely for the reasons discussed above.

Finally, SFG's assertions of unfairness are not compelling. SFG argues it entered the August 2019 stipulation because it believed judgment was entered in July 2019, and was still pursuing that theory in the California Supreme Court when it entered the December 2019 briefing stipulation. But SFG presumably knew or should have known by the appeal dismissal in October 2019 that it might oppose fees on timeliness grounds—yet there was no such qualification in the stipulation. SFG also suggests CW benefitted from SFG's failure to appeal the January 2019 order. Whereas it is evident SFG agreed to the fee motion stipulations, SFG does not establish CW took any position on the timeliness of its appeal.[6] SFG's reliance on *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171 is thus misplaced. (*Id.* at p. 181 [" 'It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite' "].) SFG also does not establish it is unfair that different timing triggers may apply to notices of appeal and fee motions; as noted *ante*, they serve different purposes. In any event, to the extent fairness were an issue here, we can conclude the superior court resolved it in CW's favor by finding the fee motion timely.

C.    *Statutory Interpretation*

    1.    *"Substantial Contribution" under Section 1861.10(b)*

SFG contends a "substantial contribution to the adoption of any order . . . or decision" requires a significant and distinct contribution. It contends in turn that one cannot "merely participate[]" or "parrot" another

---

[6]    SFG notes the Commissioner opposed SFG's petition for review (and argued in part that the January 2019 order was a final and appealable judgment)—but the Commissioner and CW have not made identical arguments in this case, as the rest of this opinion will make clear.

17

party's arguments and, rather, the contribution "must have affected the court's order . . . in a significant way" and be "consequential."  SFG notes the dictionary definition for "substantial," and the regulation requiring a substantial contribution in Commissioner proceedings to be both relevant and "separate and distinct" from that offered by another party.  (Black's Law Dict. (11th ed. 2019) p. 1728 [defining "substantial" as "Important, essential, and material; of real worth and importance."]; Reg. § 2661.1, subd. (k) [substantial contribution definition].)  Respondents agree section 1861.10(b) requires a significant, distinct contribution and also note the regulations, but maintain this mandates only that the contribution result in "more relevant, credible, and non-frivolous information being available"—and contemplates "separate and distinct" perspectives, not just arguments.  (Reg. § 2661.1, subd. (k).)

We conclude the plain meaning of section 1861.10(b) requires a significant, distinct contribution, but not more.  Despite SFG's characterization, there is no real dispute an intervenor cannot "merely participate" or "parrot" other litigants.  However, to the extent SFG suggests the contribution needs to be used or even adopted by the court—as when it states the contribution "must . . . affect[] the court's order" or be "consequential"—the statute does not support that interpretation.  For example, a court could rely on an intervenor's argument in declining to reach an issue, which could impact adoption of an order without affecting its text.  We need not address whether it could be sufficient for an intervenor to offer a distinct perspective, because the superior court found CW *did* provide distinct information and argument.

We need go no further, as the language is clear (*Hoechst*, *supra*, 25 Cal.4th at p. 519), but this interpretation is also consistent with the broader statutory and regulatory scheme and the purposes of Proposition 103.

Section 1861.10 is titled "Consumer Participation," and it supports broad participation. Subsection (a) permits intervention by "any person," and subsection (b) requires only that one make a substantial contribution and "represent the interests of consumers." As noted, Proposition 103 also provides for public notice, hearing, and inspection. (§§ 1861.05(c)-(d), 1861.055, 1861.06, 1861.07, 1861.08.) Meanwhile, the regulations for Commissioner fee awards, which the parties agree are instructive, do not require any particular level of impact on the decision or order at issue, and permit, but do not require, reductions for duplicative work—again consistent with encouraging wide participation. (Reg. § 2661.1, subd. (k); *id*., § 2662.5, subd. (b).)

These provisions reflect "Proposition 103's goal of fostering consumer participation in the rate-setting process." (See *Garamendi*, *supra*, 32 Cal.4th at p. 1045; *ibid*. ["Proposition 103 was enacted to ' "ensure that insurance is fair, available, and affordable for all Californians." ' [Citation.] To achieve this goal, the drafters established a public hearing process for reviewing insurance rate changes. (See Ins. Code, §§ 1861.05, 1861.055, 1861.08.) In doing so, the drafters sought to 'enable consumers to permanently unite to fight against insurance abuse. . . .' (Ballot Pamph., Gen. Elec. (Nov. 8, 1988) arguments in favor of Prop. 103, p. G88)"]; *Calfarm*, *supra*, 48 Cal.3d at p. 836 ["voters . . . favored a measure that provides for public regulatory hearings with consumer participation"].) And ensuring fees are available for all significant, distinct contributions helps to encourage that participation. (See *Econ. Empowerment Found. v. Quackenbush* (1997) 57 Cal.App.4th 677,

686 (*EEF*) ["The purpose of intervenor fees is evidently to encourage consumers to participate in insurance rate proceedings by compensating them for their contribution. [Citation.] Thus, we should seek an interpretation of the statute which best facilitates compensation."].)[7]

Accordingly, we reject SFG's contention that "[t]he idea behind Section 1861.10(b) is that consumer advocates might be able to offer a *unique* perspective . . . [and] can be compensated for the value they added." SFG cites a public utility case that states intervenors "speak for a substantial segment of the population that otherwise may go unheard" and "therefore fill a gap in the ratemaking process." (*Consumers Lobby Against Monopolies v. Pub. Utilities. Com.* (1979) 25 Cal.3d 891, 911 (*CLAM*), disapproved on other grounds by *Kowis v. Howard* (1992) 3 Cal.4th 888, 896-897; *CLAM*, at p. 911 [advocates can provide "expertise and scrutiny"].) *EEF* noted this case only after determining the purpose of section 1861.10(b) was to "encourage consumers to participate," in a footnote about special contributions by intervenors. (*EEF*, *supra*, 57 Cal.App.4th at p. 686, fn. 6.) Further, the gap being discussed was just the consumer perspective offered by advocates, not unique perspectives among advocates.

We also are not persuaded by SFG's reliance on fee statutes in the public utility context and other settings generally. SFG contends they "encourage participation by certain parties," and show one must do more than "just show up and participate, or repeat another party's arguments."

---

7    (Cf. *Association of California Ins. Cos. v. Poizner* (2009) 180 Cal.App.4th 1029, 1051-1052 [rejecting view of certain Prop. 103 sections as "limiting public participation to rate hearings"; construction was contrary to liberal construal of the initiative and the purpose of "fostering consumer participation"].)

20

There remains no dispute that one must do more than "show up," and to the extent these statutes encourage more limited types of participation, they are inconsistent with section 1861.10(b) and offer no guidance here.

First, SFG explains the Public Utilities Code requires an intervening customer to "make[] a substantial contribution to the adoption, in whole or in part, of the commission's order or decision" and show that "intervention without an award of fees or costs imposes a significant financial hardship." (Pub. Util. Code, § 1803.) Not only does this statute require a hardship showing that does not exist under section 1861.10(b), but there are other significant differences as well. The statute elsewhere defines "substantial contribution" to mean the "order or decision has adopted in whole or in part" the customer's contention or recommendation. (Pub. Util. Code, § 1802, subd. (j).) And the legislative intent section expressly aims to minimize unnecessary, duplicative work. (*Id*., § 1801.3, subd. (f) ["This article shall be administered in a manner that avoids unproductive or unnecessary participation that duplicates the participation of similar interests otherwise adequately represented or participation that is not necessary for a fair determination of the proceeding."].) If anything, the Public Utility Code intervenor fee provisions underscore that section 1861.10(b) lacks similar requirements and was intended to encourage consumer participation more broadly.

Second, SFG directs us to Code of Civil Procedure section 1021.5, the private attorney general fee statute, which provides a court "may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit . . . has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement

21

. . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." This statute offers no guidance here either; it imposes even more requirements than the Public Utilities Code, including prevailing party status. Section 1861.10(b) does not require a party to "prevail." Indeed, it permits fees for a substantial contribution to the adoption of a *regulation* and other proceedings beyond rate hearings. (See Reg. § 2661.4 ["Procedure for Participation in a Proceeding Other Than a Rate Hearing"].) Code of Civil Procedure section 1021.5 is also intended "to encourage suits enforcing important public policies" by compensating "successful litigants in such cases"—a purpose wholly distinct from the broad consumer participation intended under Proposition 103. *Maler v. Superior Ct.* (1990) 220 Cal.App.3d 1592, cited by SFG here, is inapposite. (*Id.* at p. 1599 [holding § 1861.10 "does not create private right of action under section 790.03"; explaining it "does not transform section 790.03 into a private right of action, but rather, is analogous to [Code Civ. Proc., §] 1021.5, which codifies the private attorney general doctrine"].)

Finally, SFG relies on Code of Civil Procedure section 425.16, the anti-SLAPP statute. A prevailing defendant on an anti-SLAPP motion "shall be entitled to recover [its] attorney's fees and costs." (Code Civ. Proc., § 425.16, subd. (c)(1).) A prevailing plaintiff who defeats an anti-SLAPP motion that is "frivolous or intended solely for delay" also can recover reasonable fees. (*Ibid.*) Like the other statutes, anti-SLAPP imposes different requirements, for different purposes, and offers no insight into the meaning of section 1861.10(b). (See *Ketchum, supra*, 24 Cal.4th at p. 1137 [purpose of anti-SLAPP is to deter meritless cases aimed at chilling expression].)

2.	*Reasonable Fees Under Section 1861.10(b)*

SFG contends a fee award under section 1861.10(b) must be proportional to the substantial contribution, meaning it is limited to "work that led" to it.  SFG states the "substantial contribution is what triggers . . . eligibility for fees," and the "provision thus links together what action makes an intervenor eligible for fees with what fees the intervenor may receive."  It further states "[t]here is a second textual basis for this requirement," as the statute "authorizes . . . only 'reasonable' fees"; reasonable means " '[f]air, proper, or moderate under the circumstances' (Black's Law Dictionary[])"; and fees for work that "adds nothing" are not reasonable.

Respondents maintain "substantial contribution" and "reasonable fees" are independent concepts.  They explain the term "reasonable" is a "common statutory term," and relates "to the appropriate amount of compensation viewed against the rates and amounts of time billed by similarly situated advocates and witnesses performing comparable work."  They further contend that although fees may be reduced for work on unrelated claims, they generally are not reduced for alternative legal arguments.  (See *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434-436 (*Hensley*).)

We conclude section 1861.10(b) requires only that advocacy fees be "reasonable," within the usual meaning of the term in the fees context:  fair and appropriate under the circumstances.  Generally, parties "who qualify for a fee should recover compensation for '*all* the hours *reasonably spent* . . . .' " (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290; see *Ketchum, supra,* 24 Cal.4th at p. 1133 [California law requires that attorney fee awards be "fully compensatory"].)  This includes work on unsuccessful arguments.  (*Hensley, supra,* 461 U.S. at p. 435 ["[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach

23

certain grounds is not a sufficient reason for reducing a fee."].)  Nothing in section 1861.10(b) suggests "reasonable" also means "proportional to the 'substantial contribution . . . .' "  Further, interpreting "substantial contribution" to apply to eligibility for fees, and "reasonable" to apply to their amount harmonizes the statutory text and renders each term meaningful. (See *Leider v. Lewis* (2017) 2 Cal.5th 1121, 1135 ["We construe terms in context, harmonizing the statutes both internally and with each other to the extent possible"]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [" ' "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." ' "].)

In contrast, SFG's insistence that there must be a "link[]" between the "substantial contribution" and "reasonable . . . fee[]" amount is both conclusory and unpersuasive.  (*Pacific Gas and Electric Co. v. Superior Court* (2017) 10 Cal.App.5th 563, 571 ["We cannot add limiting language . . . when the Legislature did not"].)  Similarly unpersuasive is SFG's relegation of "reasonable . . . fees" to a "second textual basis" for interpreting the fee amount available.  "Reasonable" was the word selected by the drafter to describe the fee amount, and we "must look first to the words of the statute." (*Garamendi, supra*, 32 Cal.4th at p. 1043.)  As for SFG's contention that fees for work "add[ing] nothing" are unreasonable, this ignores the fact than an intervenor must make a substantial contribution to receive fees at all.  SFG further argues on reply that there is a latent ambiguity as to "reasonable," but we remain unpersuaded.  A latent ambiguity may exist when language " ' "appears clear and unambiguous on its face," ' yet ' "some extrinsic factor creates a need for interpretation or a choice between two or more possible meanings." ' "  (*Spotlight on Coastal Corruption v. Kinsey* (2020) 57

Cal.App.5th 874, 891.) SFG identifies no such factor. (Compare *id.* at pp. 877-878, 892 [general Public Resources Code statute regarding ex parte communication disclosures appeared to address issue differently than more specific statutes].)

Although the statutory language is again clear, Respondents' interpretation is also consistent with the regulations and statutory purpose.

The regulations, which remain instructive, require considering the substantial contribution "as a whole" and provide only that duplication of another party *may* result in a reduction of fees—not that it must (at least absent mere duplication of the Department staff). (Reg. § 2661.1, subd. (k) ["Substantial Contribution means that the intervenor substantially contributed, *as a whole*" (italics added)]; Reg. § 2662.5, subd. (b) [to extent "substantial contribution . . . duplicates [that] of another party. . . compensation may be reduced"]; cf. *ibid.* [Department participation does not preclude award if substantial contribution "does not merely duplicate it"].) We accordingly reject SFG's assertion that the regulations reflect the Commissioner "understood that . . . 'reasonable' means that the entity awarding fees must assess whether the person . . . did work that would not count as a substantial contribution and, if so, determine what reduction is appropriate as a result." The regulations reflect no such understanding.

As for the statutory purposes, we explained above that encouraging consumer participation is an aim of Proposition 103 and that intervenor fees encourage such participation. (See *Garamendi, supra*, 32 Cal.4th at p. 1045; *EEF, supra*, 57 Cal.App.4th at p. 686.) Interpreting section 1861.10(b) to permit recovery of all reasonable fees supports these purposes, by encouraging intervention in the first place and ensuring intervenors can vigorously represent consumers once involved. In contrast, SFG's view could

discourage intervenors by generating uncertainty over compensation, and make representation more challenging. For example, intervenors might try to predict the grounds on which a court will rule, possibly deterring them from offering all potentially meritorious arguments. (Cf. *Greene v. Dillingham Constr., N.A.* (2002) 101 Cal.App.4th 418, 424 (*Greene*) [" 'it is impossible, as a practical matter, for an attorney to know in advance whether or not his or her work on a potentially meritorious legal theory will ultimately prevail' "].) Intervenors could also have difficulty recovering fees for important, but routine matters, like status conferences and stipulations, limiting their ability to participate fully.

SFG's purported concerns here are unfounded. SFG first suggests that permitting all reasonable fees would lead to unnecessary or excessive intervention. Section 1861.10(b)'s requirement that fees be "reasonable" already preserves trial court discretion to reduce fees for unnecessary, excessive, or duplicative work. (*PLCM*, *supra*, 22 Cal.4th at p. 1095; cf. *Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1101 [superior court did not abuse its discretion by reducing Civ. Code, § 1717 fee award for overlitigation and duplication].) Thus, intervenors are already incentivized to participate effectively and efficiently. SFG also contends that consumers ultimately foot the bill for excessive intervention. It is true that "[w]here [the intervenor's] advocacy occurs in response to a rate application, the award shall be paid by the applicant" (§ 1861.10(b)), and the regulations for Commissioner-awarded fees provide "[a]ny award . . . shall be allowed . . . as an expense for the purpose of establishing rates of the applicant." (Reg. § 2662.6(d).) But even assuming the regulation applies to court-awarded fees, the insurer could choose *not* to pass on the costs. Either way, the statute strikes a balance between encouraging participation to benefit

consumers and arguably permitting the costs of doing so to be passed on to them.  It is not for this court to alter that balance.

SFG again seeks to rely on the fee schemes under the Public Utilities Code, Code of Civil Procedure section 1021.5, and anti-SLAPP, arguing they link the "trigger" for fee eligibility to the fee amount, as SFG believes section 1861.10(b) does.  This reliance is even more strained here, and we again reject it.

First, SFG argues that under the Public Utilities Code intervenor fee provisions, "a consumer may be compensated only for its substantial contribution," because the statute "expressly limits . . . fees for work that does not meet that definition."  SFG states this system "makes sense," including because the public utilities commission (PUC) staff already carries out some work and this avoids duplication of their efforts.  The operation or sensibility of the Public Utilities Code fee statute has no bearing on section 1861.10(b).  Not only does it require adoption of a contention or recommendation, as discussed above, but it also provides for reduced fees for partial adoption.  (Pub. Util. Code, § 1802, subd. (j) [even if decision "adopts . . . contention or recommendation[] only in part, the [PUC] may award . . . compensation for all reasonable advocate's fees, . . . incurred . . . in preparing or presenting that contention or recommendation"].)

In turn, the public utilities cases relied upon by SFG involve requirements that do not exist here or are otherwise inapposite.  (*New Cingular Wireless PCS, LLC v. Pub. Utilities Com*. (2018) 21 Cal.App.5th 1197, 1202-1204 [PUC improperly awarded fees based on whether contributions "would have" influenced decision, as statute required link to specific decision; noting requirement appeared to be "statutory measure" of "advocacy success" and directing tracing of fees on remand]; *Southern Cal.*

*Edison Co. v. Public Utilities Com.* (2004) 117 Cal.App.4th 1039, 1052, fn. 13 [PUC could conclude costs incurred for presentation that "adds nothing" are "not reasonable"]; *The Utility Reform Network v. Public Utilities Com.* (2008) 166 Cal.App.4th 522, 534-535 [affirming denial of fees for unsuccessful appellate work, based on prior substantial contribution to PUC decision; contribution did "not automatically entitle . . . intervenor to compensation for all ensuing judicial proceedings"].)

Second, SFG argues that under private attorney general fee statutes, the "main trigger for eligibility is success on a claim that enforces the public's rights" and success "is a 'crucial factor' " in determining the amount, citing *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 (*Chavez*).  (See *ibid.* [in addressing Code Civ. Proc., § 1021.5, discussing 42 U.S.C. § 1988(b), which also applies prevailing party standard]; *Chavez*, at p. 989 [reduced award appropriate for limited success]; accord, *Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 377-378 [remanding to consider degree of success].)  SFG contends the success "trigger" is "evidence that the legislature intended to limit fees for work on claims that prevailed."

The prevailing party standard that applies to private attorney general fee awards has no bearing on section 1861.10(b), as discussed above.  The fact that such awards may be reduced for lack of success likewise is irrelevant.  Further, the presumption remains in favor of fully compensatory fees.  (See *Ketchum*, *supra*, 24 Cal.4th at p. 1133.)  And even in the prevailing party context, eligibility and amount remain distinct.  (See *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 838 (*Thayer*) [" 'Whether an award is justified and what amount that award should be are two distinct questions, and the factors relating to each must not be intertwined or merged' "; holding "significant benefit" under § 1021.5 is relevant only to "entitlement . . . in the

28

first instance"]; cf. *Graciano*, *supra*, 144 Cal.App.4th at p. 153 [court "commingled its prevailing party analysis with its inquiry into the amount [plaintiff] was entitled to recover" under consumer statute].)

Significantly, these cases recognize fees can be reduced for unsuccessful *claims*—not alternative arguments, which are generally compensable, as noted above, and important to representation.  (See *Chavez*, *supra*, 47 Cal.4th at p. 990 [trial court could and did find plaintiff "was not entitled to attorney fees for time spent litigating . . . unsuccessful claims"]; compare *Hensley*, *supra*, 461 U.S. at p. 435; *Thayer*, *supra*, 92 Cal.App.4th at p. 839 ["To reward only the pursuit of a successful theory . . . undercompensates the inevitable exploratory phases of litigation, and may also invite overly conservative tactics"]; *Greene*, *supra*, 101 Cal.App.4th at p. 424 [" 'Attorneys generally must pursue all available legal avenues and theories in pursuit of their clients' objectives.' "].)  We are not persuaded by SFG's assertion that this is a distinction that "makes no difference" here, because the so-called trigger is a "substantial contribution."  Robust representation is no less critical in rate proceedings than in more adversarial settings.

Finally, SFG contends that being a prevailing party under anti-SLAPP does not entitle a defendant to all of his or her fees, citing *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328.  Anti-SLAPP, like the private attorney general statutes, involves a prevailing party system, different policy objectives, and reductions for unsuccessful claims rather than arguments—and, like them, offers no guidance here.  *Mann* is accordingly inapposite.  (*Id.* at pp. 342-345 [reducing fee award to partially successful defendants; anti-SLAPP fee awards involve competing public policies of discouraging meritless SLAPP claims and permitting facially valid claims to

proceed, fees generally are not available for unsuccessful claims, and defendants therefore are not necessarily entitled to all fees].)

D.    *No Abuse of Discretion*

1.    *Superior Court Reasonably Found CW Made A Substantial Contribution*

SFG does not establish the superior court abused its discretion in awarding fees to CW.  We begin with the substantial contribution.  The court "ha[d] no difficulty in finding that CW made a substantial contribution," stating it "relied heavily on CW's argument that, independent of section 1861.07, [SFG] failed to show that the documents . . . were entitled to trade secret protection."  The court explained CW cited "a 13-page section of the record" where it discussed each document and addressed SFG's argument that the ALJ failed to make specific findings, whereas the Commissioner just "devoted just a few sentences" to arguing SFG did not meet its burden.

The superior court's determination is consistent with section 1861.10(b), which requires only a significant, distinct contribution to the court order at issue.  The court's findings are also supported by the record. The court's primary focus in its order denying SFG's petition was the ALJ finding that SFG did not establish its documents should be sealed, and CW's briefing on the issue was more extensive than the Commissioner's.  The court reasonably observed that CW, and not the Commissioner, focused on the documents, including by criticizing SFG's showing in this regard and citing its 13 pages of administrative briefing.  In addition, CW, but not the Commissioner, addressed *Topanga* and *EPIC*, which the court cited in discussing the adequacy of administrative findings.  The court was well within its discretion in concluding CW made a substantial contribution.

We disagree with SFG that CW's contributions were already covered by others and thus unnecessary.  SFG asserts the ALJ order "expressly stated"

30

SFG was not entitled to trade secret protection, meaning this was "not [CW's] argument"; SFG already told the superior court that CW made trade secret arguments to the ALJ; and the Commissioner offered purportedly comparable briefing. The ALJ order was what was *being reviewed* by the court; the issue was whether CW's input facilitated that review. And SFG's briefing did not convey CW's input. To the contrary, SFG claimed "no party contested [its] evidentiary showing" and "CW made some conclusory arguments"; SFG did not cite the 13 pages of CW's administrative briefing the superior court noted (instead citing other portions of CW's brief). The court could reasonably disagree that CW merely provided a "more specific citation for the same idea," as SFG contends. As for the Commissioner's briefing, the court found CW's briefing on the trade secret issue more extensive and impliedly more helpful, and the record is in accord.[8]

SFG's remaining arguments here do not compel a different result.

First, SFG contends CW duplicated the Commissioner's presentation on the other arguments as well, including section 1861.07, ORSA, the HCA, and estoppel. The superior court expressly declined to reach the section 1861.07 issue, and impliedly did not reach estoppel, so any overlap in those presentations is immaterial.[9] As for ORSA and the HCA, the court had

---

8 On reply, SFG asserts the "ALJ's order . . . (which cited the same 13 pages in [CW's] brief)" was before the superior court. It provides no record cite for this belated assertion, and our review of the ALJ order reflects no such reference to the 13 pages of CW briefing.

9 SFG suggests the section 1861.07 issue is "illustrative," because like "many of [its] other arguments," CW "did not prevail . . . so compensation is inappropriate for that reason alone." SFG is wrong on both the law, as discussed above, and on the facts: the court declined to reach two arguments

31

found generally that the parties' briefs were not "carbon copies," and the record is in accord. For example, the superior court could find CW provided a more detailed HCA analysis, with an additional statutory quotation and an accompanying request for judicial notice of the legislative history, which the court had granted. And on ORSA, CW addressed, inter alia, case law raised by SFG that the Commissioner did not brief. Regardless, the existence of some overlap would not undermine the court's substantial contribution finding. The court reached these issues only after affirming the ALJ's finding that SFG had not established trade secrets, and could reasonably conclude CW's heavy input on trade secrets and more than "carbon cop[y]" input on the rest was sufficient to constitute a substantial contribution as a whole.

Second, SFG argues that "[w]hat was important to [CW]" was getting a ruling on the section 1861.07 issue, not on "39 documents." It was SFG that framed the issues in its petition and continued to seek declaratory relief as to section 1861.07 after writ relief was denied—which CW opposed on the grounds the case was "over." In any event, SFG does not establish a party's litigation goal is relevant under 1861.10(b). *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, cited by SFG here, is from the prevailing party context and inapposite. (*Id.* at pp. 17-18 [Code Civ. Proc., § 1021.5 fee award was excessive, where prevailing party in class action "did not get everything he sought"]; *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 571 [successful party "ordinarily . . . means the party to litigation that achieves its objectives"]; cf. *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876-877 [prevailing party analysis under Civ. Code, § 1717 involves comparing "litigation objectives" and relief awarded].) Further, if the

(§ 1861.07 and estoppel), and agreed with CW on those it did reach (i.e., establishment of trade secret protection, ORSA, the HCA).

32

superior court had considered litigation objectives, it could reasonably conclude CW achieved them. Not only did CW defeat SFG's petition, the relief it sought in its answer, but the court's final order also eliminated an earlier tentative ruling for SFG on the section 1861.07 issue.

2. *Superior Court's Fee Award Was Reasonable*

We now turn to the amount of the fee award, and conclude SFG establishes no abuse of discretion in this regard, either. The superior court impliedly used the lodestar method, concluding CW's fee request was reasonable based on time records reflecting its counsel's work and hourly rates. The court also noted SFG argued only against fees in their entirety, which it rejected, and declined to apply SFG's proposed 75 percent reduction to reflect CW's purportedly limited contribution.

This determination is again consistent with the law and the record. We concluded above that reasonable fees under section 1861.10(b) are not limited to work leading directly to the substantial contribution. SFG concedes it did not object to specific hours worked or rates charged, and maintains that, under its view of the statute, "there is no need to nitpick a party's time entries." The superior court properly rejected that view, and SFG accordingly forfeits any objection to the lodestar amount. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n* (2008) 163 Cal.App.4th 550, 564 [failure to raise specific objections to hours worked "forfeits the claim on appeal"].)

The court also reasonably declined to use SFG's proposed 75 percent reduction, both because SFG did not establish any basis for a reduction in the first place and because the number appears to be arbitrary. (Cf. *Ketchum*, *supra*, 24 Cal.4th at p. 1134 [lodestar approach "ensur[es] that the amount awarded is not arbitrary"]; cf. *Mountjoy v. Bank of America, N.A.* (2016) 245

33

Cal.App.4th 266, 280-281 [reversing across-the-board 70 percent reduction in fees that was based on invalidity of 70 percent of billing entries].) SFG summarily asserted at the fee hearing that an award proportional to CW's contribution would not exceed "25 percent of the lodestar," and it still does not explain why the number should be 25 percent. It just states this would be "reasonable." The superior court could reasonably disagree.

SFG's remaining arguments lack merit. First, SFG contends this matter "concerns fees incurred litigating a single motion—made during a vast administrative proceeding—that had no effect on the resolution of the case on the merits," and elsewhere calls it a "sideshow to the main event of the rate proceeding." Section 1861.10(b) provides for fees in both Commissioner proceedings and in the courts, and it was SFG that filed the superior court petition on sealing and named CW as a respondent given its possession of the documents. CW reasonably proceeded to oppose sealing, as it did in the rate hearing. SFG does not persuasively argue or cite any authority to establish CW's fees for this work should be reduced, simply because the matter arose in a larger dispute. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

Second, SFG argues CW's work in this case "did not result in any consumer gain." It maintains CW's real purpose was to obtain a ruling on the section 1861.07 issue, which involved an "important question of law" and might have had "actual stakes," but nothing indicates the 39 documents "are of any interest to consumers." CW disagrees, contending SFG's petition sought to override Proposition 103's disclosure requirement, which is "fundamental to [the initiative's] goal of encouraging consumer participation"

34

in ratemaking. (*Garamendi*, *supra*, 32 Cal.4th at p. 1045 [giving public access to information provided to the Commissioner under Proposition 103 was "wholly consistent with [its] goal of fostering consumer participation"].) We need not resolve this disagreement, as SFG does not establish section 1861.10(b) requires consumer benefit in the first place.

Finally, SFG argues CW "unnecessarily litigated issues that it knew full well the Commissioner would raise . . . and to which it had nothing unique to add," and the superior court "should have considered" that when setting the fee award. Again, it was SFG that raised the issues here, not either respondent, and pursued one of them even after writ relief was denied. (See *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 627 [fees "incurred by [respondent] . . . [were] increased by [appellant's] own conduct"; "one ' "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response" ' "]; *Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 114 [accord].) Further, the court's fee order makes clear it did consider, and reject, any argument that CW unnecessarily duplicated the Commissioner's efforts, including by finding the briefs were not "carbon copies."

DISPOSITION

The order is affirmed.  The Commissioner and CW shall be awarded their costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:



GUERRERO, J.



DO, J.